## George M. Bishop, Plff. in Err., v. Township of Schuylkill.

While a township is required to construct and maintain its public roads
in such a manner as to make them safe for usual and ordinary travel, yet
it is not chargeable with damages resulting from extraordinary accidents
which may happen on them, and which reasonable skill and care would not
be required to guard against.

The running away of a horse is not a contingency against which the
township is bound to provide.

Where a public road ends in a steep declivity on another road, long dis-
continued, without any barrier at the top of the slope, and a horse, driven
along the former one, runs away, through no fault of the township, plunges
down the declivity and is killed, it is not error for the court to allow the
jury to determine whether there was any duty imposed upon the township
in its relations to the traveling public, to erect such a barrier.

(Argued February —, 1887.   Decided March 7, 1887.)

January Term, 1887, No. 58, E. D.   Error to the Common
Pleas of Chester County to review a judgment on a verdict for
the defendant in an action of trespass on the case.   Affirmed.

The facts as they appeared at the trial before FUTHEY, P. J.,
are stated in his charge to the jury, which was as follows:

This action is brought by George M. Bishop against the town-

NOTE.—Where one is injured by being thrown over a declivity near a
public highway, it is ordinarily for the jury to say whether it was negligent
to fail to erect barriers.   Burrell Twp. v. Uncapher, 117 Pa. 353, 2 Am. St.
Rep. 664, 11 Atl. 619; Wellman v. Susquehanna Depot, 167 Pa. 239, 31 Atl.
566; Trexler v. Greenwich Twp. 168 Pa. 214, 31 Atl. 1090; Kitchen v.
Union Twp. 171 Pa. 145, 33 Atl. 76; O'Malley v. Parsons, 191 Pa. 612, 71
Am. St. Rep. 778, 43 Atl. 384; Davis v. Snyder Twp. 196 Pa. 273, 46 Atl.
301.

As to liability for defective highway as affected by the fact that a horse
was frightened when the accident occurred, see the presentation of au-
thorities in editorial note to Schaeffer v. Jackson Twp. 18 L. R. A. 100.

See also Hubbell v. Yonkers, 104 N. Y. 434, 58 Am. Rep. 522, 10 N. E.
858; Monk v. New Utrecht, 104 N. Y. 552, 11 N. E. 268.

ship of Schuylkill, to recover damages for the death of a horse, occasioned, as he alleges, through the negligence of the supervisors.

It appears from the evidence that there was formerly a public road running east and west along the brow of a hill overlooking the Schuylkill river, near the borough of Phœnixville, and that another public road, known as the Dayton street road, leading from the borough, entered that old road at a point designated on the draft to which you have been referred during the trial.

In 1864 and 1868 the public road along the brow of the hill was vacated. The portion of the road east of where the Dayton street road entered was vacated in 1864, and closed in 1865, and that portion west of where Dayton street entered was vacated in 1868; so that eventually, by these two vacations, the whole of the road was vacated.

The effect of this vacation was that Dayton street, which had formerly entered that public road, thus leading the travel in both directions, terminated on the south side of the vacated road; and from that time to the present there has been no travel along that portion of the continuation of Dayton street, beyond the gate of the cemetery, there being no farm houses to reach, and no occasion to drive that way.

When the road along the brow of the hill was vacated, no portion of the Dayton street road was disturbed, it being left just as it had been originally laid out, and as it had been traveled for a number of years.

It is, perhaps, proper to remark that the court would not have laid out the Dayton street road in the condition in which it was left by the vacation of the road along the brow of the hill. Public roads are laid out between public points, and usually from road to road; but they may be laid out to points that are not public roads, such as a mill, a church, a graveyard, a school-house, a railroad station, or, perhaps, the foot of a mountain. While then I have said that the court would not have laid out the Dayton street road as it was left by the vacation of the road along the brow of the hill, it does not follow that any portion of the Dayton street road was in law vacated, by the vacation of the road along the brow of the hill. The road remained there as a public road, and, although it was not needed for public travel and would not seem for twenty years to have been traveled beyond the gate of the cemetery, it still remained a legal, public highway.

The plaintiff claims that on the day when this accident happened, he sent his son with a horse and sleigh, containing an overbox, to the Catholic cemetery; that owing to a deep fall of snow, which had drifted to some extent, the sleigh was upset; that while his son was attempting to right the sleigh, the horse started; that his son was unable to stop the horse, on account of the depth of the snow; that he fell and let go the reins; that the horse proceeded on out the Dayton street road, past the cemetery gate, until it got to the end of the road, and that when it reached the brow of the hill it plunged down the precipice and was killed.

. The plaintiff contends that the township was negligent in not having closed the end of the road where the accident occurred, and that his horse was killed in consequence of this negligence on the part of the supervisors. .

It is the duty of the supervisors to keep the highways in a reasonable degree of repair. It is impossible to guard against the occurrence of all accidents upon public roads; but it is the duty of the supervisors, having regard to the safety of the traveling public, to adopt such precautions as will provide against the occurrence of accidents that might be avoided in the ordinary use of the public roads. It is also their duty to keep the roads in such condition that not only may gentle and quiet horses be driven over them, but that even skittish and fractious horses may be driven with comparative safety.

The evidence in this case shows that the runaway did not happen through any fault on the part of the supervisors of Schuylkill township. A recent fall of snow was upon the ground. There was no duty incumbent upon the borough of Phœnixville, within whose limits the horse started, to remove the snow from where it had fallen.

It appears that the sleigh upset in consequence of the drifting of the snow; that the horse then started, the driver subsequently losing control of the animal, and then kept on until it plunged over the brow of the hill.

[If the starting of the horse, in the first place, had been occasioned through any fault of the supervisors, then the township would be liable for negligence, provided the cause of the starting of the horse was proximate, or not too remote; but I instruct you that under the testimony the township of Schuylkill was clearly not responsible for the starting of the horse, nor its subsequently getting beyond the control of the driver, and finally meeting

with the accident. It is not the duty of a township to provide against accidents which may happen to runaway teams.]

The supreme court has said on this subject: It is true that ordinary provision is not to be made against contingencies so rare as runaway horses. Roads and bridges are constructed for the purpose of ordinary travel; and if they fulfil such purpose, they are sufficient; and those who have them in care are not chargeable with the results of extraordinary accidents which may happen upon them.

This doctrine is, of course, subject to the principles I have stated,—that public roads should be maintained in such condition that even skittish and fractious horses may be driven upon them with comparative safety.

[Under ordinary circumstances, a township not being required to make provision against runaway horses, I have instructed you that the township of Schuylkill was not responsible for the running away of the plaintiff's horse; and therefore the principles applicable to the circumstances of this case, the negligence of the township not having been primarily the cause of the horse running away, are those relating to the performance of the ordinary duties devolving upon township supervisors in respect to the public roads.]

The question for your consideration is whether the accident was caused through any negligence on the part of the township of Schuylkill. [It has been argued that a barrier at the end of the road might have prevented the accident; and yet the township might not be responsible for the absence of such a precaution. It frequently occurs that stumps, rocks, and ditches are on the side of roads; in which event it might be said that if they had not existed at the time of an accident, in all probability it never would have happened; and yet the township might not be held liable for negligence in not removing such obstructions. If then it is a fact in the case that this accident would never have happened if a fence had been placed across the end of the road, at the brow of the hill, it does not follow that the township was guilty of negligence in not erecting such a barrier at that point.]

The question is simply whether there was any duty imposed upon the township, in its relations to the traveling public, to erect a fence at that point of the road where the accident occurred.

It appears from the evidence that the road in question has

not been traveled for twenty years; and yet it still remained a public road. The township seems to have entirely lost sight of the fact that such a public road existed, there having been no occasion for its use by the public, at least beyond the cemetery gate.

The question of whether the township was guilty of negligence in not placing a fence across the road is not a question of law for the court, but one of fact for your determination.

You have heard all the testimony that has been given in the case in respect to the condition of this road, and the character and ending of the Dayton street road. There is some dispute as to whether or not the cemetery fence was extended the entire length down to where Dayton street enters this road; but it is clear that the road ran across the end of Dayton street; that it was an ordinary public road; that it was sufficiently wide for public travel, and that it was vacated; while it may be presumed that the road was level until it reached the declivity.

The plaintiff's horse, after reaching the end of the road, would seem to have passed diagonally to the right, some 40 feet, before it plunged over the cliff. The question therefore arises as to whether it was the duty of the supervisors to have placed a fence or guard at the end of the road, so as to prevent accidents occurring from runaway horses.

[I have instructed you that the township is not responsible for the running away of this horse, nor for the driver losing control of the animal; that the township was not bound to provide against such a contingency; that the township is only responsible for an accident occurring through the neglect of its supervisors, in not providing against contingencies that might be reasonably foreseen.]

If the accident happened through the negligence of the supervisors, in the proper performance of their duties, the plaintiff would be entitled to recover in this action. If they were not thus negligent, then the accident would not have occurred through any fault on their part, and the township could not be held responsible.

In other words, if the township had caused the running away of the horse, or been the means of the driver losing control of the horse, then the township would be liable for whatever accident happened to the horse thereafter, provided it was not too remote in its consequences; but the township, not having caused the running away of the horse, nor caused the driver to lose control of

the animal, was not bound to provide against the running away of the horse, unless the accident which followed was occasioned through the negligence of the supervisors in not providing against a contingency which might have reasonably and properly been presumed would arise under such circumstances.

I do not attribute any importance to the fact that there existed an intervening space of land belonging to private parties. The contingencies townships are to provide against are those that may be reasonably apprehended will arise by those in authority. There may be a precipice alongside of a road, or a precipice a short distance from the road, and the township may be required to afford equal protection against accidents occurring by means of one as well as the other source of danger; but from all the evidence in the case it is your duty to determine whether the supervisors were negligent in not guarding against such an accident occurring at the point where the plaintiff's horse was killed.

[If the plaintiff's horse had been under the control of the driver would this accident have happened? The horse was not under the control of the driver, and therefore the township was not responsible for any accident that happened to the runaway horse. The supervisors were not required to provide against accidents that might happen to runaway horses, but simply against such contingencies as should be foreseen in the proper performance of their duties.]

In cases where accidents happen, even through negligence on the part of the supervisors, the township cannot be held liable, if there has been any contributory negligence on the part of the party seeking to recover damages.

The evidence in this case, however, does not show that the accident occurred through any negligence of the plaintiff, or his son who was driving the horse, at the time of the accident, and therefore the principle of contributory negligence, which sometimes becomes an element for consideration, does not enter into the solution of the questions I have submitted for your determination.

The plaintiff asked the court to charge, *inter alia:*

1. "The use of the road leading from Dayton street to the point of the accident in Schuylkill township, by the public as a highway for more than twenty-one years, made it a public road, just as effectually as though it had been originally laid out and

opened by the proper authorities; and the failure of the super-visors to properly guard it at the point where the accident hap-pened is negligence *per se,* and the township is liable for any damage resulting from such negligence."

*Ans.* This point consists of two parts: first, I am requested to instruct you that the Dayton street road is a public road, which is a question for your determination; and second, that if it is a public road, the failure of the supervisors to place a fence across the end of it was negligence in itself. I cannot affirm the point in the language in which it is written. I cannot instruct you, as a matter of law, that the failure of the supervisors to place a fence across the end of Dayton street was negligence in itself, as it is a question of fact I have referred to your consideration. (Adding at the end of the answers to the defendant's point.) The counsel for the plaintiff has used this language, *viz.* "The use of the road leading from Dayton street to the point of the accident in Schuylkill township by the public, as a highway for more than twenty-one years, made it a public road just as effect-ually as though it had been originally laid out and opened by the proper authorities." There is no doubt but that such is the law on the subject, and therefore that portion of the point is affirmed. That is to say, the use of a road for the length of time Dayton street appears to have been used by the public as a highway makes it a public road; and therefore I have referred to Dayton street as an existing public road from the borough of Phœnix-ville to the point where the Dayton street road would end, on the south side of the vacated road along the brow of the hill. The testimony in the case warrants the court in saying that the Day-ton street road was an existing road, at the time of the accident, to the point that has been designated on the drafts offered in evi-dence.

3. "If the jury believe that a fence across the end of the road at the top of the precipice would have prevented the accident, and that there was no contributory negligence on the part of the driver of the horse, then the township is liable for failing to maintain the fence, and your verdict should be for the plaintiff."

*Ans.* I cannot affirm this point in the language in which it is written. It may be that a fence across the end of the road would have prevented the accident; but it does not follow that because there was no fence there, the township was therefore

guilty of negligence. I have submitted that question of fact to you, and therefore the point, as written, is disaffirmed.

The defendant submitted, *inter alia,* the following points:

3. "The upset and runaway began within the limits of the borough of Phœnixville, as the plaintiff himself alleges; and there being no new intervening defect to the line of the terminus of the road, the township of Schuylkill was in no manner responsible therefor, or for the consequences thereof."

*Ans.* I have instructed you that there is no evidence to show that the township had anything to do with the causing of the horse running away from the driver, or the driver losing control of the animal, and that therefore the township would not be responsible for any consequences resulting from the horse running away from his driver, unless the township was guilty of negligence at the point where the accident occurred.

The township may or may not be responsible for the consequences of the accident, that question depending upon whether or not the supervisors were guilty of negligence at the point where the accident occurred, and whether their negligence caused the accident. The township, however, is not responsible for the consequences of the accident by reason of anything that happened when the driver lost control of the horse.

6. "If the jury shall find that the horse ran over a bank upon private ground, 30 feet beyond the south line of the roads as vacated, then, whether the horse was driven beyond the line of the public road or ran away from no cause of the township's, the plaintiff cannot recover in this case."

*Ans.* This point is affirmed. I have referred to your determination the question as to whether the township was guilty of negligence, and if so, whether that negligence was the cause of the accident.

7. "The evidence being uncontradicted that the public had no call, actual or by implied invitation, to drive beyond the gate of the cemetery, over 200 feet from any alleged dangerous point, such dangerous point being at least the width of the vacated road beyond the end of the public road, there can be no recovery in this case."

*Ans.* This point I have answered in the instructions I have given the jury.

The assignments of error specified the portions of the charge inclosed in brackets and the answers to the points given above.

*H. H. Gilkyson,* for plaintiff in error.—The plaintiff was entitled to have the question, whether, under all the evidence, the township·was guilty of negligence in not placing a fence or barrier across this road, submitted to the jury. It was not a question of law for the court, but one of fact for the jury. The jury have a right, not only to find the facts, but also the inferences fairly deducible from those proved. Myers v. Hart, 10 Watts, 104; Collins v. Barnes, 83 Pa. 15.

The presumption of a fact in law which carries a case to a jury necessarily leaves them in possession of the case. True, the evidence to rebut the presumption may be very strong; yet it is a matter for the jury, and not for the court. Pennsylvania R. Co. ·v. Weiss, 87 Pa. 448.

The question whether borough officers are negligent in permitting a precipice to remain unfenced, and whether a plaintiff's loss resulted from that neglect, is for the jury. Pittston v. Hart, 7 W. N. C. 165.

Public roads must be kept in such repair that even skittish animals may be employed without risk or danger on them, by reason of the condition of the roads. Lower Macungie Twp. v. Merkhoffer, 71 Pa. 276.

A road may be perfectly safe under some circumstances, and very unsafe under others. A way 10 feet in width, in the open country, may be as secure as one of ten times that width; but along the brow of a precipice such a way would be very insecure. Perhaps, indeed, a steady, sure-footed team, handled by a cool and skilful driver, may pass over it as securely as over the former; but drivers of only ordinary nerve, with fractious teams, are unsafe upon it, and it is just for this reason that such a road should be protected with guards, which under ordinary circumstances would not be essential. Hey v. Philadelphia, 81 Pa. 44, 22 Am. Rep. 733.

If a public road through a township is so dangerous by reason of its proximity to a precipice that common prudence requires extra precaution in order to secure safety to travelers, the township is bound to use such precautions, and the omission to do so is negligence. Scott Twp. v. Montgomery, 95 Pa. 444.

If a township fails to maintain a road in a proper and safe condition, whereby the plaintiff, without negligence on his part, is damaged, the question of the negligence of the township is

properly for the jury. Lowre Windsor Twp. v. Gemmill, 16 W. N. C. 265.

Although without the frightening of the horse there would have been no accident, the horse is naturally a timid animal, and is so liable to fright that those having charge of the public highways ought to make reasonable provision for a matter so common and so likely to happen at any time. Pittston v. Hart, 7 W. N. C. 165.

Where a barrier is necessary for the proper security of travelers and the road was unsafe to all travelers without it, and the presence of such a barrier would have prevented the injury, the township is liable. Alger v. Lowell, 3 Allen, 402; Shearm. & Redf. Neg. § 391; Wharton, Neg. § 968; Newlin Twp. v. Davis, 77 Pa. 317; Hey v. Philadelphia, 81 Pa. 44, 22 Am. Rep. 733; Scranton v. Dean, 2 W. N. C. 467.

To submit to the jury the question whether "the use of the road by the public as a highway for more than twenty-one years made it a public road"—a question clearly of law—was error. The error in this instruction was not cured by anything subsequently said by the court, by way of correction; for an instruction which may have misled the jury, although subsequently qualified, is ground for reversal. O'Hara v. Richardson, 46 Pa. 385; Shimer v. Jones, 47 Pa. 268.

*R. T. Cornwell* and *B. F. Fisher,* for defendant in error.— The authorities are only to provide safeguards against foreseen dangers to the ordinary traveling public, and not to animals running at large upon the public highway, or those which have broken loose from their drivers. McCormick v. Washington Twp. 112 Pa. 185, 2 Cent. Rep. 584, 4 Atl. 164.

In the present case the public had no occasion to go beyond the cemetery gate, 250 feet from the semblance of danger. Ordinary provision is not to be made against contingencies so rare as runaway horses. Roads and bridges are constructed for the purpose of ordinary travel, and if they fulfil such purpose they are sufficient; and those who have them in care are not chargeable with the results of extraordinary accidents which may happen upon them. Hey v. Philadelphia, 81 Pa. 44, 22 Am. Rep. 733.

When a horse, while being driven with due care upon a highway which a town is bound to keep in repair, becomes, by rea-

son of fright, disease, or viciousness, actually uncontrollable so that his driver cannot stop him or direct his course or exercise or regain control over his movements, and in this condition comes upon a defect in the highway, by which an injury is occasioned, the town is not liable for the injury, unless it appears that it would have occurred if the horse had not been so uncontrollable. Titus v. Northbridge, 97 Mass. 258, 93 Am. Dec. 91.

For the plaintiff to recover, the defect must have been the sole cause of the accident which resulted in the injury; if the plaintiff's horse became uncontrollable, and was so when the accident occurred, the plaintiff could not recover; but if there was only a momentary loss of control, and the control would have been instantly regained if the plaintiff's carriage had not come in contact with the place where the way was defective, then the plaintiff could recover.    In order to render the town or city liable, the defect of the way must be the sole cause of the injury.    Babson v. Rockport, 101 Mass. 93; Rowell v. Lowell, 7 Gray, 100, 66 Am. Dec. 464; Stickney v. Salem, 3 Allen, 374.

If a horse gets loose and runs upon the highway, the town is not liable.    Richards v. Enfield, 13 Gray, 344; Davis v. Dudley, 4 Allen, 557.

PER CURIAM:

We discover no error in this record.    While a township is required to construct and maintain its public roads in such a manner as to make them safe for usual and ordinary travel, yet it is not chargeable with damages resulting from extraordinary accidents which may happen on them, and which reasonable skill and care would not be required to guard against.

The case was submitted to the jury in a clear and correct charge.    McCormick v. Washington Twp. 112 Pa. 185, 2 Cent. Rep. 584, 4 Atl. 164.

Judgment affirmed.