112 185
151 585

# McCormick *versus* Township of Washington.

1. A township is not required to assume that its bridges will be used in an unusual and extraordinary manner, either by crossing at great speed or by the passing of a very large and unusual weight. As it does not anticipate any such use, it is not required to so build as to protect against injury resulting from such reckless conduct.

2. Its liability stops with constructing and maintaining its bridges, so as to protect against injury by a reasonable, proper and probable use thereof, in view of the surrounding circumstances, such as the extent, kind, and nature of the travel and business on the road of which it forms a part.

February 19th, 1886. Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT, GREEN and CLARK, JJ.

ERROR to the Court of Common Pleas of *Lycoming county:* Of July Term, 1885, No. 108.

This was an action in trespass on the case to recover damages which the plaintiff sustained through the alleged negligence of the Supervisors of Washington township, in neglecting to keep the highways of said township in a safe and passable condition. Plea, not guilty.

The facts of the case as they appeared on the trial before CUMMIN, P. J., are fully shown in the following charge:

The issue which you have been sworn to try arises in an action on the case brought by Henry C. McCormick against the township of Washington. Henry C. McCormick, the plaintiff in this case, brings suit to recover damages which he alleges he has sustained by reason of the negligence of the officers of the township of Washington, defendant, in not keeping their public highways in proper repair. He claims that on the 20th of September, 1883, at about one o'clock in the afternoon, as he was travelling upon the highway of Washington township and attempted to cross South creek upon a bridge which is there erected as a part of this highway, the bridge broke down. That at the time he was traveling with his steam threshing machine, which consisted of three different vehicles. The first was the engine and boiler on four wheels, the second containing the water tank, and the third containing the separator—all hitched together. That these vehicles were being transported by means of a traction engine. That a team of horses (or rather a horse and mule), were hitched in front for the purpose mainly of guiding the machine. The machine was propelled by the traction engine contained in the first vehicle. That when they got upon this bridge one of the stringers broke; the team was precipitated

[McCormick *v.* Township of Washington.]

into the stream and the engine and tank followed, and the separator remained hanging on the one side ; the horse was injured and the machine was injured. That it cost him a considerable sum of money to have this machine repaired, the items of which he testified to. The injury to the horse was stated to you as equal to the sum of $20, making a total of the items of damage of $349.06. He has brought this action to recover the damages which he sustained at that time. Now, that an accident occurred at that place at that bridge on the 20th of September, 1883, is not in dispute. That fact you will have no trouble about. The amount of damage which he sustained is not seriously in dispute. I am not sure that there was any contrariety of opinion as to any of the items. So those questions will not be of difficult solution for you. The real point in this case is, however, whether or not the township is liable for this accident. It does not follow because a man is hurt on a public highway that, therefore, the township must pay the damages. That conclusion does not follow such premises. It requires something more than that. As I have said to you the real question is whether or not this township is liable to this plaintiff under the circumstances of this case, and this is a question partly of law and partly of fact. It is the duty of the court to lay down to you the law governing the case, and it will be your duty to apply that law to the facts as you may find them, and in this way you will arrive at a lawful and just conclusion of the case. It is proper for me to say in the outset that you are to be controlled by the evidence in this case as to your finding of facts, and the law which you are to apply in this case is the law which is given you by the court. If you should apply anything else great injustice might be done. If the court makes a mistake either one of the parties will have the right to have such errors corrected, and hence it is important that you should apply the law as the court gives it to you. You are to be controlled then by the law and the evidence in this case, and nothing else. You are not here to distribute money to anybody who may make a claim against the township of Washington. On the other hand, you are not here to excuse the misconduct or the negligence of township officers. You are to be controlled by the law and evidence in this case, and by nothing outside. Now, then, the question of the liability of this defendant to pay damages is really the important question, and the first thing to look at will be what were the duties of the Supervisors of Washington township in respect to this bridge where this accident occurred. By the sixth section of the Act of Assembly on the 13th of June, 1836, their duties are thus set forth :

Purd. Dig., p. 1278, pl. 43. Public roads or highways laid

[McCormick *v.* Township of Washington.]

out, approved and entered on record as aforesaid, shall, as soon as may be practicable, be effectually opened, and constantly kept in repair; and all public roads or highways made, or to be made, shall at all seasons be kept clear of all impediments to easy, and convenient passing and travelling, at the expense of the respective townships as the law shall direct.

Purd. Dig., p. 1279, pl. 49.   It shall be the duty of the Supervisors aforesaid, in making and repairing the public roads, to make and maintain, within their respective townships, sufficient causeways of stone or timber on marshy or swampy grounds, and also to make and maintain sufficient bridges over all small creeks and rivulets and deep gullies, where the same shall be necessary for the ease and safety of travellers.

Where a bridge becomes necessary to be built in the construction of a highway, it becomes a part of the highway, and is to be kept in repair just as the highway is to be kept in repair.   This statute says that the bridges must be " *sufficient* for the easy and safe travelling by the persons desiring to travel the same."   This word " sufficient," as used in this Act of Assembly, does not merely mean that there shall be a sufficient number of bridges.   It does *not* merely mean that they shall be of sufficient width.   It means as well that they shall be of sufficient strength.   The word " sufficient," as used, means that the bridges shall be equal to the end proposed by their erection ; that they shall be adequate to the wants of the public there ; that they shall be competent for the purpose for which they are intended.   Thus we find that when bridges form a part of the public highway, they must be of sufficient size and strength to accommodate the public in the usual and ordinary modes of travel, so that they may pass and re-pass over the same with ease and safety.   The township, though bound by this law to the duty of the maintenance and sufficient repair of its bridges, is not absolutely bound for the soundness of the structure it erects as a part of the highway. The township is not an insurer against all defects, latent as well as patent, upon its highways, but is liable for negligence. Where a defect in a lawful structure is latent—that is hidden, cannot be seen, or is the work of a wrong-doer, for instance, some person cutting the timber—express notice of it must be brought home to the township officers, or the defect must be so notorious as to be evidence to all passers, then the township will be charged with constructive notice.   What is negligence is a question in each different case, and must depend on the peculiar circumstances of each different case.   When a bridge has stood for the time timbers are expected to last, and it may be reasonable to expect that decay has set in, it is negligence to omit proper precautions to ascertain its condition.   In such

[McCormick *v.* Township of Washington.]

cases—where it has remained a sufficient time—appearances will not excuse the negligence, but it is the duty of the supervisors to call to their assistance those whose skill will enable them to ascertain the state of the structure.

These are the duties of supervisors in respect to the bridges. It is claimed by the township defendant that they ought not to be held liable in this case, because the bridge was not defective, or contained at least no such defect as the law holds them liable for. The plaintiff complains that the bridge was defective, and that it was such a defect as the law holds the township responsible for. That then is one of the points for you to examine. Another point you will have to pass upon is, the defendants say (whether or not the bridge was defective) the plaintiff was not travelling in the usual and ordinary way in which persons travel in that township and its vicinity. That he was travelling by means of an unusual and extraordinary vehicle; and this will also be a question for you to determine ; whether or not he was using the usual and ordinary modes of travel; the modes of travel for which these highways were constructed and these bridges were intended to be used. It will be necessary for you to consider what sort of a vehicle this was. You will also consider its weight; that it consisted of three different parts which were connected together; that these parts could be used separately ; that at the time the accident occurred the two horses were in front of the first machine and were upon the bridge. Their weight will come into consideration, together with the weight of so much of the machine as was upon the bridge. You will also take into consideration the fact that it was being propelled by steam, by traction. The engine, the front part of which was upon the bridge, was pulling the two vehicles that were behind. They were coming up the incline approach to the bridge on that side. You will also consider that this machine had been used in this township and vicinity for three seasons; that other machines were used in adjoining townships ; and you will ascertain how much of this machine was upon the bridge—what weight there was there. Witnesses have testified as to the weight; you have the way-bill upon which the plaintiff paid his freight, and he explains why that shows more than the real weight. You will also consider that there was water in the boiler and in the tank. From the evidence you will determine whether or not this was an unusual vehicle, and determine whether or not the plaintiff was using the bridge in the usual and ordinary way that it was intended to be used. Then you will look at the bridge. Was there or not a defect in that bridge? This bridge it seems was built in June, 1877. The witnesses are called upon the stand who selected the trees in

the woods and superintended their being cut down and made into timber, and their being put into this bridge. The witnesses are called who put it in. They testify as to the condition of the timber. You will observe how long it remained there until swept away. The evidence is that it went off by a flood in July, 1883, that is, about six years and a month after it was erected. The whole bridge was carried down the stream some distance, the abutments having been washed away. In August, 1883, the abutments were rebuilt and these same timbers replaced as the chords of the bridge. The witnesses are called who put the timbers back and erected the bridge in 1883. One of the witnesses testifies that he observed the unsoundness of the stick which broke, but did not communicate his views to the supervisor. Another witness testifies that he observed it and told the supervisor. The supervisor is called but has no recollection of any such thing being told to him. Numerous other witnesses are called who were there and assisted in re-building the bridge, and they testify that the stick was tested and was believed to be sound, and no objection was made by any person there as to its unfitness to be put in. You will also consider in this connection that this bridge was used from the time it was erected and until broken, by the persons who travelled back and forth across it, and that about ten days before this accident a heavy threshing machine, propelled by horse-power, was taken across the bridge, which, with the weight of the horses, would amount to about five tons. That a few days before another machine was transported across there, and the witness says, if the whole apparatus was on the bridge, it would weigh from three to five tons. You have before you a block cut from the chord that was broken. That is a piece of evidence which it will be your duty to consider. In looking at that block you will remember that it is about two years—nearly two years—since it was broken, and that that block was kept in a wagon shed —probably exposed to the weather—whether or not is not disclosed by the witness. Part of the time it was used as a chopping block. You will observe whether or not it contains dry rot or discloses doziness, such as is claimed by the plaintiff. From the evidence you will determine whether or not that bridge was of defective construction at the time of the accident, and whether or not it was of such defective construction as the law will hold the defendants responsible for. If they knew it was defective, then of course the township would be liable for their knowledge and failure to remedy it. If they did not know of the defect, then was it such a defect, and was their means of examining it so imperfect, that they should be held responsible for it. If it was not that kind of

[McCormick *v.* Township of Washington.]

a defect then the township would not be liable although it broke.

Another point comes into this case: the defendants claim that the plaintiff did not use ordinary care and caution in going over the bridge. That he was travelling with an unusual and extraordinary vehicle of great weight, and being propelled by such power as increased the danger to bridges; that he might have gone by another route; that he might have crossed the fording; that he might have hauled pieces over separately, and that they were arranged for that purpose. To this the plaintiff replies that the fordings were not used; that he had no reason to suppose anything was wrong with the bridge, and that he was told the other route was unsafe. You will remember that the plaintiff is a resident of the township, and was, in 1879 and 1880, a supervisor of the township, and was probably acquainted with all the roads and bridges, acquainted also with the usual mode of travel in that vicinity, and was aware of the purpose for which the bridges were built. All this is proper for you to consider in determining whether or not the plaintiff neglected to do what an ordinarily prudent man would have done under the circumstances. The points submitted by counsel are so numerous, and go so extensively over the law in the case that to avoid a repetition of what I have to say upon it, I think you will better understand the law by my proceeding to answer them at this place.

Counsel for plaintiff respectfully request the court to charge the jury as follows, viz.:

1. That the bridge over which the plaintiff was, at the time of the injury complained, taking his steam thresher, formed a part of the public highway, and the defendant was bound to keep the same in such condition and repair as to make it secure and safe for all persons having occasion to pass over it with their animals or any vehicles or property required to be taken over the same, while in pursuit of their lawful business and employment.

This point is refused because it is not limited to the usual and ordinary modes and means of travel.

2. If the jury believe, from all the evidence, that the steam thresher, which the plaintiff was taking over the bridge at the time of the injury complained of, was used by the plaintiff in conducting his usual business or employment, and in the pursuit and management thereof, it was necessary for him to use the public highways for conveying the said thresher from place to place; and that while he was thus engaged, and was passing over said bridge with said thresher, the said bridge, by reason of being defective, proved insufficient, and broke down, whereby the thresher, engine and other property of

[McCormick *v.* Township of Washington.]

the plaintiff was damaged and injured, then the plaintiff is entitled to recover.

This point is refused, because to justify its conclusion it does not require you to find that the plaintiff was using the public highway in the usual and ordinary manner. It does not recognize the distinction between latent and patent defects. Nor that the plaintiff was not guilty of contributory negligence.

3. If the jury believe, from all the evidence, that threshing with a steam-power thresher is a legitimate employment, and that, at the time of the injury, the plaintiff was propelling his thresher over the highway and bridge as such threshers are ordinarily taken over highways and bridges, and the injury and damage was caused by a defect or the use of unsound timber in the re-building of such bridge, which defect the supervisor, by a proper examination, could have ascertained or discovered, then the plaintiff is entitled to recover.

This point is refused, because its affirmance would require us to assume that the plaintiff was not guilty of contributory negligence, and was using the usual and ordinary means of travel.

4. If the jury believe from the evidence, that the chord or stringer was defective and rotten when put into the bridge when it was rebuilt, and such defectiveness or rottenness was the immediate cause of the injury, then the plaintiff is entitled to recover.

This point is refused, because to justify its conclusion it does not require you to find that the plaintiff was using the public highway in the usual and ordinary manner, and requires us to assume that the plaintiff was not guilty of contributory negligence.

Counsel for the defendant respectfully requests the court to charge the jury as follows:

1. That the township defendant is liable only for want of ordinary care and diligence on the part of its supervisors in the maintenance of the bridge, which formed part of the highway.

That point is affirmed.

2. That the township is not liable, unless there was negligence upon the part of its supervisors in the maintenance of this bridge, and that the burden of proving negligence is upon the plaintiff.

That point is also affirmed.

3. That in order to enable the plaintiff to recover in this case, it must have been proven to the satisfaction of the jury, if the defect in the stick of timber was latent or hidden, that the township supervisors either had express notice of the

[McCormick v. Township of Washington.]

defect and did not repair it, or that the stringer which broke must have been in use for such a length of time as would in itself imply a knowledge of its unsoundness on the part of the supervisor.

That point is also affirmed.

3½. If the jury believe that the ordinary life or durability of white oak timber, such as was used in the stringers of this bridge, was from 15 to 25 years, and that the timber which broke had been used but six years, there could be no implied notice to the supervisors of the unsoundness of the stick.

That point is affirmed.

4. If the jury believe that the supervisors, or those in their employment, when rebuilding the bridge in July or August of 1883, tested the alleged defective chord or stringer by cutting into it with an axe, or in any other manner, as an ordinarily prudent man would do under the same circumstances, they performed their duty, and negligence cannot be inferred because of a mistake made in the performance of such duty.

That point is affirmed.

5. That the duty of the supervisors is well performed if the bridge complained of was in a reasonably safe condition for travel in the ordinary modes, in the neighborhood and by the people who commonly used said bridge.

That point is affirmed.

6. That the supervisors of the township are not required by law to make preparation for the safety or convenience of those who undertake to use the highway in an unusual or extraordinary manner, involving peculiar and special peril and danger by reason of the magnitude of the construction of the carriages used, or the volume or weight of the property transported.

That point is also affirmed.

7. If the jury believe that the plaintiff, in attempting to cross the bridge in question, was using the bridge in an unusual and extraordinary manner, or with extraordinary vehicles or vehicles of unusual weight not suitable or adapted to a highway opened and prepared to be used in the common intercourse of society and in the transaction of the usual and ordinary affairs of business, he takes upon himself the risk of loss and damage, and he has no right to recover from the township for the injuries sustained, even though such injuries be the direct results of such defects and imperfections of the highway as would render the township liable to individuals in the lawful and proper use of the highway.

That point is affirmed also.

8. If the jury believe that the vehicles being transported by the plaintiff across the bridge in question were of extraordinary weight and of unusual character, involving peculiar and special

[McCormick v. Township of Washington.]

peril and danger to the bridge, the plaintiff was bound to exercise extraordinary care and caution in passing over the bridge, and the omission to exercise such extraordinary care and caution would be negligence on his part, and he cannot recover in this case.

That point is also affirmed.

9. If the jury believe that an ordinarily prudent man, in transporting such vehicles as were used by the plaintiff across this bridge, would have disconnected them and taken them over separately, and the plaintiff neglected to do so and attempted to take them all over at once, the plaintiff would be guilty of contributory negligence, and the verdict must be for the defendant.

That point is affirmed, if you find that such negligence contributed to the happening of the accident.

10. That the plaintiff was bound to take notice of the apparent strength of the bridge, the purpose for which it was built, and the kind of vehicles ordinarily used thereon; and if he took upon said bridge vehicles of unusual and extraordinary weight, he was putting the bridge to an unlawful use, and he is not entitled to recover for damages that ensued.

That point is also affirmed.

11. That if the jury believe that an ordinarily prudent man, in transporting vehicles of the weight and character used by the plaintiff, would either have disconnected the parts and taken them across the bridge separately, or would have crossed the creek by the one or the other of the two convenient fordings, proven by the plaintiff himself to have existed, then the plaintiff, by attempting to cross the bridge with the entire train of vehicles connected together, was guilty of contributory negligence, and there can be no recovery in this case, no matter what the character or condition of the bridge may have been.

That point is refused, because it seems to me to include a matter not proper for the court to decide. But it is submitted to you to say whether or not such negligence contributed in any degree to the happening of the accident. If you find it did, then we say to you, the plaintiff is not entitled to recover in this case.

12. That it is the duty of the jury, in determining the question whether or not the supervisors performed their duty in the premises, to take into consideration the situation of the bridge, the character of the highway of which it formed a part, the number of people it was designed to accommodate, the character of the travel over and across the same and the freight to be transported, and if the jury find that the bridge in question was sufficient to accommodate the persons likely, under

2 Amerman—13

ordinary circumstances, to use the same, and safe and convenient for travel in the ordinary modes used in that neighborhood, the township is not liable for the accident resulting to the plaintiff, if such accident was occasioned by an extraordinary and unusual use of the bridge on the part of plaintiff.

That point is also affirmed.

Now, then, gentlemen of the jury, from this you discover that to entitle the plaintiff to recover you must be satisfied, first, that the plaintiff suffered damage by reason of an accident that occurred while he was travelling on the highway, in the township of Washington. [He must show you next that at the time this accident occurred he was using the highway in the ordinary and usual manner in which that highway is, has been, and was intended to be used. Then he must show you, in addition to that, that the accident complained of was occasioned by the negligence of the supervisors of Washington township in not keeping their public highways in proper and sufficient repair and condition. Then it must appear that the plaintiff was not guilty of any act of neglect which contributed to the accident. If you find that this plaintiff was not travelling in the usual and ordinary way of travel in that vicinity, he is not entitled to recover. If you find that this accident was not occasioned by the negligence of the supervisors of Washington township in not keeping their public highways in proper condition and repair, then he is not entitled to recover. If you find that he in any degree contributed by his negligent acts to the happening of this accident, then he is not entitled to recover. Thus you see what the points are that you are to pass upon. If the plaintiff fails on either of these points, he is not entitled to recover.] If he is entitled to recover in this case he will be entitled to a verdict for such damages as he suffered at the time of the injury, and the amount, as I have said, is not disputed. The detailed statement he gave you amounted to $349.06. If that is the amount of damage he suffered, he would be entitled to interest on that sum from the time of the injury until the time of the verdict. If the plaintiff is not entitled to recover, then your verdict will be, in general words, verdict for the defendant.

Verdict for the defendant and judgment thereon; whereupon the plaintiff took this writ assigning for error the answers to the plaintiff's points, the affirmance of the defendant's points, and that portion of the charge included within brackets.

*H. W. Watson* (*J. J. Metzgar* with him), for plaintiff in error.—1. A highway is a public way for the use of the pub-

lic in general, for passage and traffic, without distinction: Starr *v.* C. & A. R. R. Co., 4 Zab., 592.

When the highway is not restricted in its dedication to some particular mode of use it is open to all suitable methods, and it cannot be assumed that these will be the same from age to age, or that new means of making the way useful must be excluded merely because their introduction may tend to the inconvenience or even to the injury of those who continue to use the road after the same manner as formerly: Mecomber *v.* Nichols, 34 Mich., 212; 22 Am. Reports, 522.

2. It was the business of the supervisors to have ascertained the true condition of the old timbers when the bridge was rebuilt. Not doing this was negligence: Rapho *v.* Moore, 18 P. F. S., 404. And if the defectiveness or rottenness was the *immediate* cause of the injury, it precludes the idea of any contributory negligence on the part of the plaintiff. " Immediate " means " proximate," " acting with nothing interposed or between, or without the intervention of another object as a cause, means, medium or condition ": Webster's Dic. And if the plaintiff was not guilty of contributory negligence, it can make no difference in what manner he was using the public highway, provided such use was not unlawful.

3. The burden of showing contributory negligence is on the defendant: R. R. Co. *v.* Gladmore, 15 Wall., 401; Mallory *v.* Griffey, 4 Nor., 275; Brown *v.* Gilmore, 11 Id., 40; Creed *v.* R. R. Co., 5 Id., 139; R. R. Co. *v.* Boudrou, 11 Id., 479.

*H. C. McCormick* (*S. T. McCormick* and *R. P. Allen* with him), for defendant in error.—1. The question, what is a " safe and convenient " road or bridge, or what is a " defect or want of repair" therein, within the meaning of these terms as used in the statutes of the states to which we have referred, is one of fact for the jury to determine under the instructions of the court, upon the circumstances of each particular case, such as the season of the year, the hour of the day or night, the manner in which the accident occurred, and the nature of the accident itself: Shearman & Redfield on Negligence, § 369, *a.*

A municipal corporation is not an insurer against accidents upon the streets or sidewalks from defects therein, though they may cause the injury sued for. Generally it is sufficient if the streets are in a reasonably safe condition for travel in the ordinary modes, by night as well as by day, and whether they are so or not is a practical question to be determined in each case by its particular circumstances: Dillon on Munic. Corps., 758.

2. Whether a given state of facts constitutes contributory negligence is for the court, but whether it contributed to the accident is for the jury: R. R. Co. *v.* Armstrong, 52 Pa. St., 282; R. R. Co. *v.* Ackerman, 74 Id., 265.

3. A township is not required to make preparation for the safety or convenience of those who undertake to use the highway in an unusual or extraordinary manner, involving peculiar and special peril and danger, whether it be in respect to the kind and character of the animals led or driven, or the magnitude of the construction of the carriages used, or the volume or weight of the property transported, and if any person undertakes to use or travel upon a public highway in an unusual or extraordinary manner, or with animals, vehicles or freight not suitable or adapted to a way opened and prepared to be used in the common intercourse of society, and in the transaction of the usual and ordinary affairs of business, he then takes every possible risk of loss and damage upon himself: Gregory *v.* Inhabitants of Adams, 14 Gray, 242.

The requisite strength of a bridge depends upon the extent and nature of the travel and business on the road: 6 Verm., 496.

In an action for negligence the jury are the judges, whether under the peculiar circumstances the act of the defendant was the proximate or remote cause of the injury: Holmes *v.* Watson, 29 Pa. St., 457.

Negligence is the absence of care according to the circumstances: Turnpike Co. *v.* R. R. Co., 4 P. F. S., 350; Phila., Wilm. & Balt. R. R. Co. *v.* Stinger, 28 Id., 225; R. R. Co. *v.* Killips, 7 Norris, 405.

Concurrent negligence is the absence of such a degree of care as the circumstances of the case demand: Penna. Canal Co. *v.* Bently, 66 Pa. St., 30; the case of the City of Lancaster *v.* Kissinger, 11 W. N. C., 151.

What is negligence is always a question for the jury when the measure of duty is ordinary and reasonable care, and when the standard of the degree of care shifts with circumstances: R. R. Co. *v.* McElwell, 67 Pa. St., 311; Johnson *v.* R. R. Co., 70 Id., 357; McKee *v.* Bidwell, 74 Id., 218.

Chief Justice Mercur delivered the opinion of the court, March 8th, 1886.

The duty of a township to keep its roads and bridges in repair was correctly stated by the learned judge. It, however, is not required to assume that its bridges will be used in an unusual and extraordinary manner, either by crossing at great speed or by the passing of a very large and unusual weight. As it does not anticipate any such use it is not required to so

[Sossong v. Rosar.]

build as to protect against injury resulting from such reckless conduct. Its liability stops with constructing and maintaining its bridges so as to protect against injury by a reasonable, proper and probable use thereof in view of the surrounding circumstances, such as the extent, kind and nature of the travel, and business on the road of which it forms a part.

We discover no error in the record.

Judgment affirmed.