# Gehringer *v.* Lehigh County, Appellant.

*Negligence—Bridges—County bridge—Change in character of travel— Repairs—Inspection—Latent defects.*

1. A county is liable for damages suffered through a failure on the part of the floor system of one of its bridges, while there was being taken across it a load which, in respect of weight and otherwise, was different in character from the ordinary and usual travel over the highway in the locality of the bridge at the time it was built, but not different from such travel at the time of the accident, if the county commissioners, although properly maintaining the bridge in accordance with its original design and plan, made no effort to strengthen it for some length of time after much heavier vehicles had come into common use.

2. It is not reversible error for the court to affirm a point to the effect that it is the duty of the commissioners, upon being informed that a county bridge is out of repair, to examine thoroughly and to make such repairs as would render it perfectly safe for ordinary travel, or to close it up to prevent the public from using it. The use of the phrase "perfectly safe" states the law somewhat strongly against the county, but it is not without authority.

3. In an action against a county to recover damages for injuries sustained by the breaking of the floor of a county bridge where there is evidence that the county commissioners had inspected the bridge, the question of the sufficiency of the inspection is for the jury to decide upon the evidence, guided by the impression which the witnesses made upon them as to the sincerity and thoroughness of the tests described.

4. Where the evidence shows that the inspection of the commissioners was most casual, there is no error in charging that, "the omission to search for and discover latent defects resulting from the decay of material used in the bridge is evidence of negligence properly chargeable to those whose duty it is to repair," and "when a bridge has served for the time timbers are expected to last, and it may reasonably be expected that decay has set in, it is negligence to omit all proper precautions to ascertain its condition."

5. The rule that a county acting as a public agency is not liable for the negligence of its officers does not apply to the obligation of county commissioners to repair and properly maintain county bridges, inasmuch as such obligation is a positive statutory duty upon the commissioners, the fulfillment of which the public have a right to demand.

Argued Jan. 31, 1911.   Appeal, No. 252, Jan T., 1910,
VOL. CCXXXI—32

by defendant, from judgment of C. P. Lehigh Co., Sept. T., 1909, No. 34, on verdict for plaintiff in case of Annie E. Gehringer v. Lehigh County. Before Brown, Mestrezat, Elkin, Stewart and Moschzisker, JJ. Affirmed.

Trespass to recover damages for death of plaintiff's husband. Before Trexler, P. J.

The facts are stated in the opinion of the Supreme Court.

Verdict and judgment for plaintiff for $5,000. Defendant appealed.

*Errors assigned* were various instructions set forth in the opinion of the Supreme Court.

*Reuben J. Butz,* with him *Claude T. Reno,* county solicitor, for appellant.—There is no liability for wrongful exercise of discretionary powers: Lehigh County v. Hoffort, 116 Pa. 119; Trescott v. Waterloo, 26 Fed. Repr. 592; Carr v. Northern Liberties, 35 Pa. 324; Fair v. Philadelphia, 88 Pa. 309; Bear v. Allentown, 148 Pa. 80; Cooper v. Scranton, 21 Pa. Superior Ct. 17; Fairlawn Coal Co. v. Scranton, 148 Pa. 231; Collins v. Philadelphia, 93 Pa. 272; Mills v. Brooklyn, 32 N. Y. 489; Wilson v. The Mayor, etc., of New York, 1 Denio, 595; Urquhart v. Ogdensburg, 91 N. Y. 67; Lansing v. Toolan, 37 Mich. 152; Hines v. Lockport, 50 N. Y. 236.

In Pennsylvania there is no common-law duty of counties to repair highways, or bridges or sidewalks; such duty and consequent liability must be imposed by statute, or be held not to exist: Williamsport v. Lycoming County, 34 Pa. Superior Ct. 221.

The identical question under consideration has been before the courts of last resort of the states of Indiana and Michigan, and their decisions are at least of persuasive force: Board of Com'rs of Vermillion County v. Chipps, 131 Ind. 56 (29 N. E. Repr. 1066); Fulton Iron & Engine Works v. Kimball Twp., 52 Mich. 146; Stebbins v.

Keene Twp., 60 Mich. 214; Woodbury v. Owosso, 64 Mich. 239.

The measure of care and prudence demanded of county commissioners in the care and supervision of county bridges is the care and prudence exercised by ordinarily prudent men in their own affairs, and where the defect in a lawful structure is latent the officers must have actual notice: Childs v. Crawford County, 176 Pa. 139; Ford v. Roulet Twp. 9 Pa. Superior Ct. 643; Whitmire v. Muncy Creek Twp., 17 Pa. Superior Ct. 399; Hardin County Commissioners v. Coffman, 48 L. R. A. 455.

*Thos. F. Diefenderfer*, with him *Francis G. Lewis*, for appellee.—The bridge was not properly maintained: Smith v. Muncy Creek Twp., 206 Pa. 7; Clulow v. McClelland, 151 Pa. 583; Berks County v. Reading City Pass. Ry. Co., 167 Pa. 102; Rapho v. Moore, 68 Pa. 404; Rigon v. Schuylkill County, 103 Pa. 182; Humphreys v. Armstrong County, 56 Pa. 204.

Opinion by Mr. Justice Moschzisker, May 1, 1911:

The verdict was for the plaintiff and the defendant has appealed. The principal question involved is stated by appellant as follows: "Is a county liable for damages suffered through a failure of the part of the floor system of one of its bridges while there was being taken across it a load which, in respect of weight and otherwise, was different in character from the ordinary and usual travel over the highway in the locality of the bridge at the time it was built, but not different from such travel at the time of the accident, if the county commissioners properly maintained the bridge in accordance with its original design and plan of construction?"

The county bridge in question was erected prior to the year 1840 where a public road, which has since become a main throughfare, crossed a stream, about a mile and a half beyond what is now the city of Allentown. At that time Allentown was a mere village with rural surroundings;

it had gradually grown and extended, however, until at the time of the accident its built up portions were within three blocks of the southern end of the bridge, with a scattering of houses and a number of industries still nearer. The territory on the other side of the bridge had likewise seen a large increase in population; towns and villages had come into existence; car wheel, cement, hardware and other manufactories had been erected and actively operated for some years prior to the accident. The bridge was 118 feet long by 19 feet wide and consisted of a wooden superstructure resting on stone pillars and abutments. It contained ten spans, each 11 feet in length, and 5x7 hemlock stringers, 11 feet in length laid 33 inches apart, supported the planks of the floor. The structure had not been rebuilt since its erection, the floor system remained of the original type, and the stringers in the immediate part of the bridge which broke down and caused the accident had never been replaced or repaired.

On January 26, 1909, Chester Gehringer, the husband of the plaintiff, and two other men, were riding across the bridge on a motor truck containing a load of flour, the truck and load together weighing about 14,000 pounds; when they reached the third panel from the northern end that part of the structure suddenly gave way and precipitated the truck into the stream below, causing the plaintiff's husband and one of his companions to be drowned. The accident was due to the giving way of the stringers. Upon investigation it was found that one of the broken stringers in the panel through which the motor truck fell contained dry rot, which was not visible from the outside.

The defendant's testimony was to the effect that early in August, 1906, workmen employed in making repairs to the bridge had removed certain of the planks and tested the stringers, by pounding or jabbing them with a crowbar, a hatchet, or with an eight pound iron hammer, and that the commissioners had then substituted new stringers for all those which they deemed unsound; that in 1908, about five months before the accident, repairs were made

by a carpenter and his three sons, who removed all of the planks upon the bridge excepting those in the two panels on the southern end, tested the stringers in a like manner, and replaced those which seemed to be unsound.

The defendant contended that, if at the time the bridge was built it was sufficiently strong to care for the then ordinary and usual travel over the highways in that locality, and if the county had maintained the structure in good condition according to its original carrying capacity and construction, the commissioners had performed their full duty; further, that, if the weight of the motor truck and its contents was greater than the load usually and ordinarily transported over the highways in the vicinity at the time the bridge was built, though not greater than the usual and ordinary loads at the time of the accident, the failure of the commissioners to strengthen the bridge in order to take care of such greater loads would not be negligence. But the trial judge refused so to charge. On the contrary he instructed the jury that the legislature had recognized the right to operate motor vehicles on the roads of the state, and that when such vehicles, of the description and weight in ordinary use in a section of the country, have been running for several years, it becomes the duty of the county authorities to strengthen the bridges so as to withstand the increased strain and provide against injuries from such ordinary use of the highways. It was left to the jury to say what was the ordinary use of the roads in the vicinity of the bridge in this case, the court adding: "Had the carrying of such loads as this auto had on that day become ordinary and usual? If it had then the duty of the commissioners was to provide a bridge sufficient to carry it. When I say provide a bridge, I do not mean a new bridge. The commissioners are not charged with the rebuilding of bridges . . . .; all that they are charged with is the maintenance of the bridge and all that they could be charged with here is that if the use of the auto trucks carrying the weight this one did, and with the formation of the body this one had, I mean

in regard to the amount of the pressure exerted in any particular place, become common, then it would be their duty to strengthen the bridge to meet the changed condition of travel, not to reconstruct the bridge, but merely to strengthen it so as to accommodate that travel." And, "If you find these auto trucks of the size that this auto truck was were common and ordinary means of conveyance in the neighborhood of this bridge and over the roads leading to and from it, then your verdict should be in favor of the plaintiff. If you find they were not so, then you should find in favor of the defendant." These instructions and the refusal to charge as requested by the defendant constitute the specifications of error 1–3 and 9–13 inclusive, and raise the question involved stated at the head of this opinion. We shall dispose of all of these assignments in considering the points covered in that question.

In the opinion refusing a new trial the learned president judge of the court below says: "The trial . . . . established the fact that auto trucks of the weight and general character of the one in which the decedent was at the time of the accident were in general use in the locality of the bridge . . . . An open bridge . . . . bears the imperative duty on the authorities charged with its maintenance to keep it in such a condition that the public may safely use it. If this involves a strengthening of the floor, then it becomes the duty . . . . to strengthen it. They (the commissioners) may not build a substantially new bridge, but . . . . they may make repairs and strengthen an old structure so long as the general character of the bridge remains the same. In some states the courts have held that the authorities are only required to maintain bridges of the same style and character of the original bridge, and adequate for the traffic then existing. To this view I cannot agree. To hold that the county commissioners may, upon an inspection of a bridge . . . . remove the floor timbers which were suitable for the demands of travel sixty years ago, but totally inadequate for present public demands, and replace them with tim-

bers of the same size, and then invite an unsuspecting public to use it, seems to be entirely wrong. When the commissioners in the present case repaired the floor structure of the bridge, they might have guarded against the happening of this regrettable accident . . . . by inserting additional stringers and thus strengthening the bridge so as to admit of its supporting loads of the weight of the loaded auto truck." The excerpt just quoted and the instructions before summarized contain a substantially correct statement of the law governing the question under consideration.

"In this state the duty (to repair) is statutory, and therefore we must look to the statute for its nature and extent:" Rapho v. Moore, 68 Pa. 404. The Act of June 13, 1836, P. L. 551, required public roads, including bridges, to be "constantly kept in repair." The Act of April 13, 1843, P. L. 221, provides: "It shall be the duty of the county commissioners . . . . to repair all bridges erected by the county, and to pay the expenses of such repairs out of the county treasury." The Act of March 30, 1905, P. L. 81, makes a precisely similar provision as to "All county bridges heretofore erected or to be hereafter erected." Although ·counties are not by these statutes expressly made liable for injuries resulting from neglect properly to maintain their bridges, yet we have uniformly and long held that a mandate to repair carries with it a responsibility, which, if neglected, may give rise to such a liability; and the thought running through our cases is that these statutes fix an imperative duty upon the counties properly to repair a bridge, which includes the obligation to maintain it, "so as to protect against injuries by a reasonable, proper and probable use thereof in view of the surrounding circumstances, such as the extent, kind and nature of the travel, and business on the road of which it forms a part:" McCormick v. Washington Township, 112 Pa. 185.

In Shadler v. Blair County, 136 Pa. 488, where a heavy traction engine broke through a county bridge, in entering

judgment for the plaintiff, we said, per MERCUR, C. J., "The duty of the commissioners was . . . . performed if the bridge was in a reasonably safe condition for travel, in the ordinary mode used in the neighborhood. . . . One of the duties of the county commissioners . . . . was to keep the county bridges in good repair. . . . For more than forty years they recognized that duty and undertook to perform it. It was not until after Shadler was killed in consequense of their neglect . . . . that they attempted to deny the existence of the obligation." In Clulow v. McClelland, 151 Pa. 583, a traction steam threshing engine went through a township bridge; we affirmed a nonsuit entered because of the contributory negligence of the plaintiff, but restated the law as ruled in McCormick v. Washington Township, supra, and further said, per PAXSON, C. J.: "The legislature has recognized the right to take steam machinery over the public highways . . . . When the use of steam engines for threshing or other lawful purposes becomes so general that their transportation over the roads amounts to an ordinary use of them, it may be necessary to strengthen the bridges so as to withstand the increased strain." In Coulter v. Pine Township, 164 Pa. 543, in an action to recover damages for death caused by a traction engine's breaking through a bridge, we held, per MITCHELL, J., that it was proper to leave to the jury the question whether or not such engines had become a usual and ordinary mode of travel when the bridge was reconstructed about five years before the accident; and we there referred to the warning contained in the case last cited, adding, "How far, and under what circumstances it may become the duty to strengthen . . . . bridges which are otherwise safe and in good repair, we need not discuss until the question is really before us." In Berks County v. Reading City Pass. Ry. Co., 167 Pa. 102, p. 118, we said, per WILLIAMS, J., in referring to a county bridge: "The county thus becomes liable for its proper construction and its safety as a part of the highways. . . . If the structure is insufficient to sup-

port the increased and lawfully authorized use of the highway of which it is a part, it is the duty of the county commissioners to say so, and to determine what ought to be done to strengthen and prepare the structure to meet the demands that will be made upon it. They may also within reasonable limits regulate the manner of its use, and provide for its repair." Finally, in Smith v. Muncy Creek Township, 206 Pa. 7, a man was injured by a bridge's giving way while riding across it on a traction engine, and the appellant contended that the authorities were "not bound to keep a county bridge in repair for the safe passage of heavy traction engines." In sustaining a judgment for the plaintiff, we said, per FELL, J.: "They (the commissioners) had knowledge that the use of traction engines . . . . had become general and that their transportation had been for many years an ordinary use of the roads of the township. They should have provided against dangers from this ordinary and reasonable use of the bridge." And in another case growing out of the same accident, Whitmire v. Muncy Creek Township, 17 Pa. Superior Ct. 399, RICE, P. J., said: "According to the testimony, steam threshers of the same description were in common use in that part of the country and had been so for several years . . . . The court could not have declared as a matter of law that the moving of traction engines for steam threshing and other purposes was at that time and in that neighborhood an extraordinary or unlawful use of the highway. Whether, in view of this common use of the highways and bridges, the supervisors were negligent in not replacing the decayed timbers" was a question "which the plaintiff was entitled to have submitted to the jury." While it is true, as contended by the appellant, that each of these cases may in some degree be distinguished on its facts from the one at bar, and that none of them can be said to be a ruling authority in the present case, yet the law as laid down in this long line of decisions fully vindicates the ruling of the court below to the effect that the obligation to repair included the duty

to maintain the bridge at a sufficient strength to accommodate the ordinary travel in the neighborhood at the time of the accident.

Lehigh County v. Hoffort, 116 Pa. 119, relied upon by the appellant, does not in any sense rule the present case. There it was "not pretended that the injuries complained of resulted from any want of care or defect in the bridge;" and in reading the opinion it must be kept in mind that the neglect alleged in that case was not the failure to perform an absolute duty, but simply the non-exercise of a discretionary power. The appellant recognizes the existence of such a distinction, yet strongly urges that the principle of that case should be applied here, contending that the failure properly to strengthen the bridge should not be viewed as more than an omission on the part of the commissioners to exercise judgment, or, at the most, the exercise of bad judgment. It argues that the question of the time for, and the manner of, strengthening the structure would, of necessity, be discretionary with the county officials, and that a jury cannot be permitted to substitute their judgment for that of the properly constituted authorities. In matters of this kind there is always a transition period. But here the evidence was sufficient to satisfy the mind of the trial judge that such period had passed some time before the date of the accident, and it was adequate to sustain the conclusion that the use of the roads by vehicles of the character of the motor truck in question had become so usual in the vicinity that the commissioners must have had knowledge of that fact for a sufficient length of time to have acted thereon and made the necessary repairs properly to strengthen the bridge. Under these circumstances the case was for the jury.

In a sense, exercise of judgment is required in making any repairs, but it is generally held that the duty of maintaining a public structure so as to prevent danger, is ministerial in its nature, and that neglect properly to perform such an obligation will give rise to an action for damages. How far this rule will apply in a case where county

commissioners have made honest and substantial efforts to keep a bridge up to a degree of strength adequate to the ordinary demands thereon, but where their efforts have not led to satisfactory results, is a question we are not now called upon to decide; for in the present instance there were no such efforts or exercise of judgment in that regard, the commissioners standing squarely upon the legal ground that there was no obligation on them to increase the carrying capacity of the bridge beyond the strength contemplated in its original construction. Though this position apparently finds support in several jurisdictions, it is not in accord with the Pennsylvania doctrine upon the subject. We conclude that the learned trial judge fell into no error in following the trend of our cases, and the assignments before enumerated are all overruled.

The seventh specification of error relates to the affirmance of a point to the effect that it was the duty of the commissioners, upon being informed that a county bridge was out of repair, to examine it thoroughly, and to make such repairs as would render it perfectly safe for ordinary travel, or to close it up to prevent the public from using it. The use of the phrase "perfectly safe" states the law somewhat strongly for the plaintiff, but we cannot say that it was without authority. In Humphreys v. Armstrong County, 56 Pa. 204, we said: "It was the duty of the commissioners to have examined the bridge thoroughly . . . . and to make a thorough repair so as to render the bridge perfectly safe, or to close it up so as to prevent the public using a dangerous part of the highway." It is to be observed that the instruction complained of relates to the duty of the commissioners upon "being informed" that a bridge is out of repair. We cannot conceive, as contended by the appellant, that the jury could have understood the point to mean that it was the imperative duty of the commissioners to find every existing defect, latent or otherwise, that might possibly detract from the perfect safety of the bridge; particularly, when we consider that the trial judge repeatedly told the

jury that the duties of the commissioners were to be meas-
ured by the "standard of duty or caution of the ordina-
rily prudent man," and that the commissioners were only
required to keep the bridge in condition for common and
ordinary travel.   The phrase "reasonably safe" would
have been more appropriate; but, as we before said, there
was authority for the expression used, and we are satisfied
that the defendant could have suffered no harm therefrom.
The assignment is overruled.

The fourth specification complains of the refusal of a long
point for charge requested by the defendant covering the
duty of inspection and repairs to the bridge, and ending
with the direction that if the facts therein set forth were
believed, there could be no recovery in the case "even if
dry rot existed in one or more of the stringers which were
in the panel through which the auto broke."   The answer
was: "Refused. As to whether the inspection was sufficient.
Not read to jury."   In this we see no error.   The question
of the sufficiency of the inspections was for the jury to
decide upon the evidence, guided by the impression which
the witnesses made upon them as to the sincerity and
thoroughness of the tests described.   "The real question
was whether the tests used were such as the ordinarily
prudent man would have adopted, and the point as drawn
practically took that matter from the jury;" whereas in
the case cited by the appellant, McCormick v. Washing-
ton Township, 112 Pa. 185, it was submitted.   The as-
signment is overrruled.

The sixth and eighth specifications complained of the af-
firmance of two requests for charge to the effect that "the
omission to search for and discover latent defects resulting
from the decay of material used in the bridge is evidence
of negligence properly chargeable to those whose duty it
is to repair," and "when a bridge has served for the time
timbers are expected to last, and it may be reasonably
expected that decay has set in, it is negligence to omit all
proper precautions to ascertain its condition."   These
assignments should be considered in connection with the

testimony concerning the personal inspections made by the commissioners, which appear to have been most casual. In speaking upon the subject in hand, in Rapho v. Moore, supra, we said: "The defect here was the inward rottenness of the timbers which constitute the main strength and principal support of the bridge. It was not outwardly visible, one of the supervisors having inspected the timbers outwardly just a short time before it fell. But the evidence shows that the bridge had been erected and stood the time it is usual that such timbers will last, . . . . and that the state of the timbers can be ascertained by persons having ordinary skill upon such a subject. It was testified that the internal condition of the timbers can be readily determined by boring into them at proper points. The question of liability for this latent defect was determined by the jury on these facts, the court having instructed them that constant watchfulness, on the part of supervisors, was a duty to the public, and having left it to them to determine whether the supervisors had used ordinary care in performing this duty, and in applying the proper test to ascertain the soundness of the timbers of the bridge. . . . When a bridge is old, having stood for the length of time that the timbers composing it are accustomed to last, and when it may reasonably be expected that decay has set in, it is negligence to omit all proper precautions to ascertain its true condition." Again, in Rigony v. Schuylkill County, 103 Pa. 382, another bridge case, we said: "Latent defects resulting from the decay of the material used, after long use, come within a different category (from 'latent defects for which there is no liability') and the omission to search for and discover them is evidence of negligence properly chargeable . . . . to those whose duty it is to repair." The excerpts quoted could be properly applied in this case, even including the reference to the propriety of boring the timbers, for evidence to that effect was produced by the plaintiff; the instructions complained of are couched in language to be found therein, and, no doubt. they were taken therefrom. The

rule laid down in the cases last cited is reiterated in the cases of McCormick v. Washington Township, supra; Coulter v. Pine Township, supra; Whitmire v. Muncy Creek Township, supra, and in Smith v. Muncy Creek Township, supra.   In this latter case, affirming a judgment for the plaintiff, we said: "The bridge that broke under the weight of the traction engine on which the plaintiff was riding was built . . . . in 1844, and from that time to the time of the accident in 1899, the floor timbers had not been renewed nor inspected by boring . . . . The strength of the bridge was ample until the timbers were weakened by decay and were subjected to a severer strain by the use of traffic engines.   As there was the duty of inspection, the deterioration of the timbers should have been known to the supervisors."   These cases support the instructions, and the assignments are overruled.

. The error assigned in the fifth and last specification was the refusal to give binding instructions for the defendant. The appellant contends that the rule that a county acting as a public agency is not liable for the negligence of its officers, should have been applied to the facts in this case. The authorities already cited show that the obligation to repair and properly maintain county bridges is a positive statutory duty imposed upon the commissioners, the fulfillment of which the public have a right to demand; in such instances the rule invoked by the appellant does not apply. Therefore, since the evidence was sufficient to justify the submission of the issues involved, the case could not have been taken from the jury.   This assignment is likewise overruled.

The judgment is affirmed.