## Sumey, Appellant, v. Fayette County.

Argued September 30, 1929. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.

*H. A. Cottom,* for appellant.—The entry of a compulsory nonsuit and refusal to take it off is error.

The facts presented by the testimony of plaintiff and his witnesses should be considered in the light most favorable to plaintiff's case: Kilpatrick v. P. R. T. Co., 290 Pa. 288; Dunbar v. Preston, 285 Pa. 502; Moyer v.

R. R., 275 Pa. 363; McDonald v. Pittsburgh, 278 Pa. 485; Myers v. Trust Co., 290 Pa. 283.

The county failed to keep the bridge in repair: Gehringer v. Lehigh Co., 231 Pa. 497, 503; Smith v. Twp., 206 Pa. 7.

The placing of the heavy pipe line and box presented an obvious defect which the county commissioners permitted to exist: Rigony v. Schuylkill Co., 103 Pa. 382.

That the bridge should have been closed until the necessary changes were made to support the additional load is further shown in McCormick v. Twp., 112 Pa. 185.

If the defects are observable, as they were in the instant case, steps must be taken immediately to protect the traveling public: Humphries v. Armstrong Co., 56 Pa. 204.

In appellant's view of the matter this case should have been submitted to the jury, not so much because the rule of res ipsa loquitur applies to it, but rather because it belongs to a class of cases in which negligence may be inferred: Fitzsimmons v. P. R. T. Co., 56 Pa. Superior Ct. 365; Matthew v. R. R., 18 Pa. Superior Ct. 10; Fisher v. Ruch, 12 Pa. Superior Ct. 240; Dei v. Stratigos, 287 Pa. 475; Campbell v. Traction Co., 201 Pa. 167; Di Iordio v. Dir. Gen. of R. R., 270 Pa. 111; Durning v. Hyman, 286 Pa. 376; Murray v. Frick, 277 Pa. 190; Smart v. Tel. Co., 83 Pa. Superior Ct. 419; Carmont v. R. R., 271 Pa. 122; Coles v. Schweppenheiser, 83 Pa. Superior Ct. 490; McCoy v. Gas Co., 213 Pa. 367.

*Joseph J. Baer,* County Solicitor, for appellee.—No negligence on the part of the county was shown: Travers v. Co., 280 Pa. 335.

If the defects are observable by reason of exterior marks, steps must be taken immediately to protect the traveling public: Case v. C. & N. Co., 248 Pa. 598; on the other hand, if the flaw is hidden, and is not obvious (Rigory v. Schuylkill Co., 103 Pa. 382), the measure of

care required is that which ordinarily prudent men would be expected to exercise in the management of their own affairs: Manning v. R. R., 296 Pa. 380; Reddington v. Phila., 253 Pa. 390; Erbe v. Transit Co., 256 Pa. 567.

The court did not abuse its discretion in permitting the cross-examination of plaintiff's witness: Jackson v. Litch, 62 Pa. 451; McCaffrey v. Schwartz, 285 Pa. 561.

OPINION BY MR. JUSTICE FRAZER, November 25, 1929:

An attentive examination of the record satisfies us the judgment of compulsory nonsuit was proper and that the trial court did not err by its refusal to take it off. The testimony establishes the fact of the accident and the manner of its occurrence, but no more. Plaintiff, a farmer and owner and operator of a grain threshing outfit, comprising a traction engine, hay baler, threshing machine and water tank, the whole weighing over fourteen tons, attempted to drive the entire equipment over a county bridge. At the moment the four wheels of the tractor and the front wheels of the baler entered upon the bridge, that end suddenly collapsed, carrying the tractor and baler, with the floor of the bridge, to the bed of the stream. The two machines were damaged and the plaintiff seriously injured.

The contention of plaintiff is that the accident was due to negligence of defendant county, through its county commissioners, in not maintaining the structure in a safe condition, in failing to properly inspect it and in permitting its use when unduly and dangerously burdened by the weight of an iron water pipe line installed from one end to the other. The bridge was erected in 1872, the substructure and the superstructure were of steel, the floor of oak planks, and the supporting steel beams extending to the top embedded in concrete casements. Heavy traffic had frequently passed over it, and plaintiff himself had driven his threshing outfit across at least four times previous to the day of the acci-

dent. The fourth crossing occurred four days before the collapse, and, during that and the three earlier crossings, no weakness in the structure was indicated and no vibrations were noticeable. Before entering upon it the fourth time, plaintiff himself made a careful inspection of the structure. "We went under the bridge," he testified, "we examined the joists, the sills; came back, walked across the bridge; went down under to the other end and examined it as close as we could; we looked up at the supports that she rested on at the top, which they looked good to me in every shape and form." Immediately before proceeding to cross on the day of the accident, plaintiff sent a companion ahead who inspected the structure and signalled "it was all right."

The evidence discloses that a few days previous to the accident a two-inch iron water pipe had been placed along one side of the bridge and at the date of the collapse a part of the pipe had been "boxed up" with yellow pine boards, filled in with damp manure. Plaintiff had observed the pipe line on his previous crossing and knew it was there when he attempted to cross on the day of the accident.

Rejecting the claims of plaintiff that the county commissioners were negligent in not properly maintaining the bridge in safe condition, and in not making adequate inspections, and that the presence of the water pipe line imposed too great a weight upon the structure by adding to the burden of regular traffic, the court below says: "There was no testimony to show that the bridge was not safe, nor was it attempted to be shown that it was not maintained in any particular as it should have been, or that the added weight of the pipe line, box and manure imposed upon it an additional burden, which, added to the burden of authorized traffic, was more than it was able to carry." The record fully sustains these findings. The testimony and the official reports of the county engineer showed that he had, at the instance of

the county commissioners, made repeated and careful inspections of the structure, the last examination being nine weeks before the accident. His inspections included the entire steel structural work, the flooring and the abutments, and the only repairs found necessary was the bolting of a 6 x 8 inch plate to a beam to prevent slight vibrations.

While counsel for plaintiff do not stress it, they cling to the theory that latent defects existed, that these should have been discovered in the course of inspections and that, being in existence, they insist that the added weight of the water pipe line affected these imperfections and caused the collapse. It is of course within the range of possibility that hidden faults in the structure existed; but throughout the extended evidence produced by plaintiff not the slightest testimony probative of such defects was given. The collapsed bridge material remained for weeks open to all for rigorous inspection. Yet, so far as the record shows, neither latent nor visible defects were discovered. No corrosion, decay, or rust, no hidden cracks or flaws were testified to by any witness or by plaintiff himself, nor was there testimony to show that the skilled engineer who made the examinations had not used all proper means to test and show the safe condition of the structure. In Rapho et al. v. Moore, 68 Pa. 404, 408, we said "That a municipal corporation, though bound to the duty of maintenance and repair, is not absolutely bound for the soundness of the structures it erects as parts of a public highway, must be admitted to be the general doctrine of the authorities on this question. It is not an insurer against all defects latent as well as patent, but is liable only for negligence in the performance of its duties," and further when "the defect in a lawful structure is latent or is the work of a wrongdoer, either express notice of it must be brought home to the corporation, or the defect must be so notorious as to be evident to all who have occasion to pass the place or to observe the premises." It may, accordingly,

not be presumed that, where, as in the present case, careful and adequate inspections disclosed neither latent nor patent defects, and none were even suspected, the examiner was to make numerous borings into the steel structure, disconnect parts or apply minute scientific and costly tests, proceedings which would most certainly and distinctly have weakened the bridge. A county is not required to adopt every test known to experts to ascertain the safe condition of a bridge: Robinson v. N. Y. C., etc., R. R. Co., 20 Blatchford (U. S.) 338, 340.

Counsel for plaintiff note specially Gehringer v. Lehigh Co., 231 Pa. 497, 507, as a strong support of their claim that the county commissioners were remiss in their duty. But in that action, where the circumstances of the accident were similar to those here, the bridge was constructed entirely of wood, the examinations were insufficient and made not by experts, the repairs previous to the accident were inadequate, and it was discovered after the collapse of the bridge that timbers in it were affected with dry rot, and that the defects were reasonably apparent to the county commissioners. The evidence there fully proved the liability of plaintiff. Mindful however of the important fact that the imposition of the duty on the municipal corporation to properly maintain public highways, of which public bridges are a part, is not to make the corporation a prey to unreasonable and needless exactions, we said in the Gehringer Case, page 507: "We can not conceive, as contended by the appellant, that the jury could have understood the point to mean that it was the imperative duty of the commissioners to find every existing defect, latent or otherwise, that might possibly detract from the safety of the bridge." Nor can we demand of defendant, where plainly it could not know and did not have notice of defects, and where in fact no faults in the structure were found after the accident, that which we did not require from a defendant clearly remiss in its duties. Under

such circumstances, where defects in a bridge structure are not gross or obvious, they are within the category of that kind of latent defects for which there is no liability: Rigony v. County of Schuylkill, 103 Pa. 382; Murdaugh v. Oxford Boro., 214 Pa. 384.

As for the contention by plaintiff that the laying of the water pipe imposed an undue burden on the bridge and was a particularly contributive cause of the accident, our examination of the record brings us in accord with the finding of the trial court that there was no testimony to support that claim; and the fact, as testified by plaintiff, that the side of the bridge over which the water pipe was not laid was the first to give away, allows the strong presumption that the pipe line was not a factor in causing the collapse. There was, as the court below points out, no testimony to show the weight of the lumber which inclosed the pipe, or of the water pipe itself, or the weight of the manure, or to show that it was more than the bridge was calculated to carry.

Since, then, as the trial court found and our examination of the evidence confirms, there was no proof of defects in the bridge and none to sustain the contention that the weight of the pipe line installation created a burden beyond its safe carrying capacity, nothing more substantial remains in the way of finding the cause of the accident than mere inference; and inference in this case leads everywhere, since under the evidence a dozen causes might be inferred, none of them, perhaps, the right one. In such situation the mental process cannot arrive at any reasonable inference; it is mere guesswork; and, manifestly, evidence which ends in such vague and unproductive results is no evidence that should be submitted to the consideration of a jury. As we said in Zeher v. Pittsburgh, 279 Pa. 168, 170: "Negligence need not be established by direct proof, but may be shown by circumstantial evidence. When such testimony is offered, the inference therefrom must establish that an accident resulting from the cause assigned was

the natural and probable consequence. Where an inference can reasonably be drawn leading to a conclusion [that] it was due to other causes [for which the municipality would not be liable], any finding by the jury represents nothing more than a guess on the main fact involved; courts could not sustain a verdict under these circumstances: Glancy v. McKees Rocks Boro., 243 Pa. 216; Propert v. Flanagan, 277 Pa. 145." We conclude with the apt words of the court below: "An unfortunate accident happened, but, under the circumstances here, one which could not reasonably have been anticipated by the county authorities, and for which no liability on the county was shown."

The above disposes of the plaintiff's first two assignments of error; we deem unnecessary the consideration of the remaining ones.

The judgment of the lower court is affirmed.