# Rapho and West Hempfield Townships *versus* Moore.

1. Without the duty to repair a highway, no liability rests upon the municipality for latent defects.

2. As a *general* proposition (not *universal*) bridges are treated as portions of the highway, and are to be maintained by the same persons as the highways.

3. In Pennsylvania the duty of maintaining highways is statutory.

4. Where a bridge crosses a stream dividing townships, the duty of maintaining it is on the townships jointly.

5. The personal liability of the supervisors for neglect of duty, does not lessen the liability of the township to those injured by the neglect.

6. Constant watchfulness by the supervisors is their duty.

7. A municipality though bound to the duty of maintenance and repair, is not *absolutely* bound for the soundness of the structures it erects as part of the highway.

8. A municipality is not an insurer against all defects, latent as well as patent, in its structures on highways, but is liable for negligence.

9. Where the defect in a lawful structure is *latent*, or is the work of a *wrongdoer*, either express notice of it must be brought home to the corporation, or the defect must be so notorious as to be evident to all passers, when the corporation is charged with constructive notice.

10. What is negligence is a question in each case, and must depend on its peculiar circumstances.

11. When a bridge has stood for the time timbers are expected to last, and it may be reasonably expected that decay has set in, it is negligence to omit all proper precautions to ascertain its condition.

12. In such case appearances will not excuse the neglect, but it is the duty of supervisors to call to their assistance those whose skill will enable them to ascertain the state of the structure.

13. Acts of Assembly as to township bridges, examined and construed.

May 2d 1871. Before THOMPSON, C. J., READ, AGNEW, SHARSWOOD and WILLIAMS, JJ.

Error to the Court of Common Pleas of *Lancaster county:* No. 56, to May Term 1869.

[Rapho v. Moore.]

This was an action on the case for negligence, brought January 10th 1867, by Michael H. Moore, against the township of Rapho and the township of West Hempfield.

The declaration was that while the plaintiff's "teamster was hauling grain in a four-horse wagon on a public highway over a certain public bridge spanning the Big Chicquesalunga creek, and thereby connecting together the two townships of Rapho and West Hempfield, the said bridge, by reason of not being in good order and repair, gave way and broke and precipitated the wagon, horses and grain into the said stream, causing great damage to the said plaintiff, to wit: killing one horse, destroying the wagon-bed, damaging wheat-bags, wheat, &c."

The plaintiff gave evidence that as his wagoner was driving on the bridge mentioned in the declaration, the bridge broke down and that the wagoner with the wagon and horses went through the breach into the creek, one horse was killed, the wheat injured, some of it entirely lost, &c.

He gave evidence also that the broken timbers of the bridge as seen afterwards were rotten; the main brace was rotten, this was the cause of the bridge giving way; this could have been seen by proper examination. The bridge was eight or nine years old, which was about the length of time such a bridge should last. The bridge had been built in 1858, and shortly after a corner of it was torn off by a wagon running against it and had not been repaired: in the opinion of a witness this was the reason of the timbers rotting. The bridge was an uncovered one.

There was evidence that before the accident, there was no appearance of weakness in the bridge, that the supervisors had examined it shortly before and had discovered nothing indicating unsoundness, that the wagon and its load were of great weight, &c.

The defendants' points were:

1. If there was any act done, or any negligence on the part of plaintiff or his agents in any way contributing to the accident of breaking down of the bridge, plaintiff cannot recover.

2. The bridge being used by plaintiff and others without knowledge of anything about it being deficient, and no notice of any kind concerning it given supervisors, the occurrence complained of was an unavoidable accident, and plaintiff cannot recover.

3. The alleged defect in bridge being latent, the supervisors could not know it, nor could ordinary skill and care have guarded against accidents.

The court (Long, P. J.,) answered these points as follows:

1. According to the language of the Supreme Court, if the plaintiff or his teamster was guilty of culpable negligence or want of ordinary care, it will be a good defence to this suit. Now, what constitutes culpable negligence or want of ordinary care?

[Rapho *v.* Moore.]

I will state that if the plaintiff or his teamster put such an excessive and improper load on his wagon, as no person of ordinary or common prudence would have done, and such excessive or improper load contributed to the accident which resulted in the alleged damage to the plaintiff, no recovery should be had. But if the weight which was placed on the wagon was not more than other persons of ordinary prudence placed on their wagons, and that wagons of similar burden and weight had been in the practice of passing over the bridge, then there would not be such negligence as would preclude the plaintiff from recovering on that account.

2 and 3. It was the duty of the supervisors of the defendants to keep the bridge in good order and repair, and therefore if the facts set forth in these points be true, still if the injury complained of resulted in consequence of the bridge being out of repair or not in good order, the omission or neglect of the supervisors to keep the bridge in good order, whether wilful or otherwise, will render the defendants liable for any damages which have accrued in consequence of such omission to repair, although they may not have had notice of the bridge being defective, or that it was of a latent defect. But the claim against them would be rendered stronger if they did not use all the proper means to ascertain whether there was any defect, and immediately repair it. But if the plaintiff or his teamster was guilty of the negligence to which I referred in my answer to the defendant's first point, he then cannot recover. I do not consider this was an unavoidable accident.

The verdict was for the plaintiff for $378.03.

The defendants took out a writ of error and assigned the answers to the points for error.

*N. Ellmaker*, for plaintiff in error, cited Reeves *v.* Del., Lack. & W. Railroad Co., 6 Casey 465; Pittsburg *v.* Grier, 10 Harris 54.

*A. H. Smith*, for defendant in error, cited Erie *v.* Schwingle, 10 Harris 388; Humphreys *v.* Armstrong, 6 P. F. Smith 204.

The opinion of the court was delivered, October 9th 1871, by

AGNEW, J.—But two questions need to be noticed in this case— the duty of repair and the liability of the townships for latent defects. Without a duty of repair no liability rests on the municipality. As a general proposition, but by no means universal, bridges are treated as portions of the highways which cross them, and are to be maintained by the same persons to whom the duty of repairing the highways is committed: Shear. & Red. on Negligence, § 248. In this state the duty is statutory, and therefore we must look to the statute for its nature and extent. The 6th

[Rapho v. Moore.]

section of the Act of 13th June 1836 requires public roads or highways to be effectually opened and constantly kept in repair, and at all seasons to be kept clear of all impediments to easy and convenient passing and travelling, at the expense of the respective townships, as the law shall direct. By the 10th section those laid out on a line which divides two townships shall be opened and kept clear and in repair at the joint and equal charge of such townships. The 27th and following sections require these duties to be performed through supervisors, to whom large powers are given for the purpose: Brightly 875, pl. 41, 42, 43, &c. Coming to the 34th section, it is provided that where a small creek over which a bridge may be necessary shall be the boundary, or on the division line of townships, the bridge shall be built and maintained at the joint and equal expense of said townships, by their respective supervisors, in the manner directed by law in the case of public roads, which may be the division line of the townships: Brightly 822, pl. 56. Thus it is clear that by law the primary duty of maintaining and repairing the bridge in question lay on the townships defendants jointly; the stream over which it was built being on the division line between them. For this purpose the supervisors of roads of the respective townships were the agents constituted by law; and it is equally clear that the personal liability of the supervisors, for their neglect to perform this duty, does not lessen the primary liability of the townships to those who suffer injury from their neglect. These principles will be found to be fully supported by the following cases: Dean v. New Milford Tp., 5 W. & S. 545; Erie City v. Schwingle, 10 Harris 385; Pittsburg v. Grier, Id. 54; Humphreys v. Armstrong Co., 6 P. F. Smith 204; Penna. and Ohio Canal Co. v. Graham, 13 Id. 290; Meadville v. Erie Canal Co., 6 Harris 66. That an action on the case will lie at the suit of a party who has suffered a special injury, as in this case, is also shown by the same authorities.

But it is contended that the defect in this bridge being latent, no liability can be imputed to the townships until it is shown that notice of the defect was given to the supervisors in whose charge the bridge lay. This is the chief question, and is not without difficulty. The defect here was the inward rottenness of the timbers which constitute the main strength and chief support of the bridge. It was not outwardly visible, one of the supervisors having inspected the timbers outwardly a short time before it fell. But the evidence shows that the bridge had been erected and stood the time it is usual that such timber will last, that it was uncovered and open to the weather, and that the actual state of the timbers can be ascertained by persons having ordinary skill upon such a subject. It was testified that the internal condition of the timbers can be readily determined by boring into them at

[Rapho *v.* Moore.]

proper points.   The question of liability for this latent defect was
determined by the jury on these facts ;  the court having instructed
them that constant watchfulness, on  part of the supervisors, was
a  duty  to  the  public,  and  having  left  it  to  them  to  determine
whether the supervisors had used ordinary care in performing this
duty, and in applying the proper tests to ascertain the soundness
of the timbers of the bridge.  That a municipal corporation, though
bound  to  the  duty  of  maintenance  and  repair,  is  not  absolutely
bound  for  the  soundness  of  the  structures  it  erects  as  parts  of  a
public highway, must be admitted  to  be the general  doctrine  of
the authorities on this question.   It is not an  insurer against all
defects latent as well as  patent, but is  liable  only for *negligence*
in  the  performance  of  its  duties.    Hence  it  is  said  in  Shear. &
Red.  on  Negligence,  § 148,  as the result  of  the  authorities,  that
when the defect in a lawful structure is *latent* or is the work of a
*wrongdoer*,  either  express  notice  of  it  must  be  brought  home  to
the corporation,  or  the  defect  must  be  so notorious  as  to  be evi-
dent to all who have occasion  to pass the place or to observe the
premises,  in  which  case  the  corporation  is  charged  without con-
structive notice, being in fault for not knowing the fact :  Id. § 407.
But what is negligence is itself a question in each case, and must
always  depend  on  its  peculiar  circumstances.    " Great  danger
demands higher vigilance and more efficient means to secure safety
—where  the  peril  is  small,  less  will  suffice :"  F. & B.  Turnpike
Co. *v.* Phila. & Trent. Railroad Co., 4 P. F. Smith 350.   " The
degree  of  care  having  no  legal  standard,  but  being  measured  by
the facts that arise, it  is  reasonable such  care must  be required,
as  it  is  shown,  is  ordinarily  sufficient  under  similar  circum-
stances, to avoid the danger and secure the safety needed :" Id.
Applying  these  principles  here,  it  may  be  asked  what  structure
more important in view of the safety of life and property, can be
well imagined than such a bridge as this, having a span of 52
feet, crossing from 10 to 12 feet above the stream whose water is
middle  deep.    The  accident  itself  is  evidence  of  its  important
character.    The plaintiff's wagon was overturned  in  the  fall, the
body crushed, the load of wheat fell underneath it into the stream,
and one of the horses was killed.   As remarked by our brother
Read, " A  bridge  looks  fair till  it  breaks down ;  it  is  not  like a
pit which you can see and avoid."   " In practice  it is used up to
the last moment :" Humphreys *v.* Armstrong Co., 6 P. F. Smith
204.    Hence such a structure demands constant vigilance to guard
and  preserve  it.    Therefore, when  a  bridge  is  old,  having  stood for
the length of time the timbers composing it are accustomed to last,
and when it may be reasonably expected that decay has set in, it is
negligence to omit all proper precautions to ascertain its true con-
dition.   Nor will mere appearance in such a case excuse the neglect.
It is a matter of common knowledge that invisible defects may, and

[Rapho v. Moore.]

under such circumstances probably do exist; that either wet or dry rot may have set in, and not be visible, and therefore should be sought for. But no one of ordinary intelligence would think of seeking for an inward and invisible defect by merely inspecting the surface of the wood. This being the case, it is clearly the duty of the supervisors, having thus reason to believe that defects may exist, to call to their assistance those whose skill will enable them to ascertain the true state of the structure, and determine the question of its safety. Without doing this much at least, their duty to the public is not performed. Not to do it is therefore negligence, and this is the point on which the case went to the jury. There is therefore no error in the submission. The exceptions to the evidence have but little merit, and are not properly assigned. They are therefore not noticed.

Judgment affirmed.