# Lohr v. Philipsburg Borough, Appellant.

*Negligence—Boroughs—Sidewalks—Degree of vigilance.*

A borough is not obliged to seek for defects in a sidewalk. The law only requires that it shall be vigilant to observe them when they become observable to an officer exercising reasonable supervision.

*Notice of defects to person afterward elected burgess.*

Knowledge of defects in a sidewalk acquired by a person before he became burgess, will not continue and bind the borough after such person becomes burgess.

Argued April 17, 1893. Appeal, No. 147, Jan. T., 1893, by defendant, from judgment of C. P. Centre Co., August T., 1890, No. 182, on verdict for plaintiff, Isabella Lohr. Before STER-RETT, C. J., GREEN, MITCHELL, DEAN and THOMPSON, JJ.

Trespass for injuries caused by defective sidewalk.

At the trial, before FURST, P. J., it appeared that, on April 29, 1890, plaintiff slipped on a defective sidewalk in the borough of Philipsburg, and injured herself. The sidewalk was made of hemlock boards, and had been down for about seven years. There was evidence that such a board walk would rot out in about four or five years.

Dr. S. F. Lytle, plaintiff's witness, under objection and exception, testified in effect that Warfel, who was elected chief burgess in 1890, said he told the chief of police to notify the owner of the property as to the condition of her pavement in the fall of 1889. [1]

The court charged in part as follows:

" According to the evidence on the part of the defendant, they did not know of the unsafe condition of the pavement. They did, however, know that this pavement was built entirely of hemlock. This pavement was known to Mr. Doyle and Mr. Funk, whose duty it was, the former being president of the street committee and the latter chief of police, to examine into the condition of the pavements of the borough. They also knew, are presumed to know—in fact one of the witnesses, I think Mr. Doyle, testified that a pavement made of this kind of wood will last ordinarily from four to six years; that after the expiration of that time a pavement, when it is laid upon

the ground as this was, partly in the ground, becomes rotten and it becomes necessary either to rebuild it, or repair it Now, knowing the character of this pavement, knowing the fact that it was subject to decay, and, after the lapse of a number of years, it would decay and would have to be repaired, the question, and the important question, in this case, is, did the authorities in this case use reasonable diligence to discover the defects in the pavement? Now, in passing upon that inquiry, I perhaps may differ a little from counsel, both on the part of the plaintiff and on the part of the defendant. I think I do not differ from them in principle, but it was not necessary, in the judgment of the court, for the town council to take up that pavement to discover its defects—that is, the law does not require them to go to that extreme. The law requires of them reasonable diligence, and that only. They were to exercise such judgment as a prudent man would ordinarily exercise under like circumstances. Now did they, in the examination of this pavement, exercise that proper care and diligence. If they did, then the defendant is not liable, even if the pavement was out of repair, because they do not guarantee or warrant the safety of the people. They are to keep the pavement in reasonable repair, so that the public, passing and repassing upon the pavement and using ordinary care, may do so with safety. Whilst they were not required to tear up this pavement to discover its defects, the judgment of the court is, it having been shown that it was an old pavement,—if you believe the testimony on the part of the plaintiff that after a certain period of time pavements of that character become defective,—it was their duty to exercise proper supervision or make proper examination of this pavement by going upon and testing it to discover, if by the eye they could do so, whether the pavement was defective or not. This could have been discovered, according to the evidence, by the fact that the nails were drawn out of the plank, owing to its rotten condition." [5]

Verdict and judgment for plaintiff.   Defendant appealed.

*Errors assigned* were (1) ruling on evidence, (5) instruction; quoting instruction, bill of exception and evidence.

*John G. Love, Daniel S. Keller, William Bryson* and *Harry*

*Keller* with him, for appellant, cited : Zimmerman v. Township of Conemaugh, 2 Cent. R. 361; s. c., 5 Atl. 45; Kieffer v. Hummelstown Borough, 151 Pa. 304.

*John H. Orvis*, of *Orvis, Bower & Orvis, Spangler & Hewes* with him, for appellee, cited : Baker v. Allegheny Valley R. R., 95 Pa. 211; City v. Smith, 23 W. N. 242; City v. Downs, 126 Pa. 622; Vanderslice v. City, 103 Pa. 102; Kibele v. City, 105 Pa. 41; Rapho v. Moore, 68 Pa. 404.

OPINION BY MR. JUSTICE MITCHELL, July 19, 1893:

The first assignment of error we are obliged to sustain. The general effect of Lytle's testimony was that Warfel said he had told the chief of police to notify Mrs. Long about her pavement in the fall of 1889, and yet it is conceded that Warfel was not elected burgess of defendant until 1890. Lytle did not attempt to explain this discrepancy, and the learned judge should either have struck out the testimony as requested, or at least have called the jury's attention to it, and instructed them distinctly that no notice or knowledge imputable to Warfel before he became burgess could in any way bind the borough. Instead of so doing however, he said, in refusing the motion to strike out, that such notice or knowledge in the fall of 1889 might " bear upon the question whether or not as chief burgess he knew," etc. This is contrary to the settled law. " It is only during the agency that the agent represents and stands in the shoes of the principal. Notice to him is then notice to his principal. Notice to him twenty-four hours before the relation commenced is no more notice than twenty-four hours after it ceased would be. Knowledge can be no better than direct actual notice." SHARSWOOD, J., in Houseman v. Girard Ass'n, 81 Pa. 256. In referring to Lytle's testimony, the learned judge in his charge did not instruct the jury on this point, and hence they may well have supposed that if Warfel knew of the defect in 1889 his knowledge would continue and bind the borough after he became burgess.

But the most important error in the case is embodied in the fifth assignment. The learned judge calling the jury's attention to the testimony that a pavement of hemlock boards such as this was, would not last ordinarily over four to six years,

said that the chairman of the street committee and the chief of police (whose duty it was by ordinance to look after the sidewalks) were presumed to know this fact, and " it was their duty to exercise proper supervision or make proper examination of this pavement by going upon and testing it to discover, if by the eye they could do so, whether the pavement was defective or not." This was holding the borough to too stringent a rule of responsibility. It was in fact applying to it the measure of duty laid down for an employer in not only furnishing safe tools to his workmen, but in knowing their liability to decay, and in replacing them at the proper time : Baker v. R. R. Co., 95 Pa. 211. But there is a clear distinction to be taken between the duties in the two cases. That of the master is primary and absolute, to know and to do, while that of the borough, or of any municipality, as to sidewalks, is secondary and supplemental, to see that the property owner makes and maintains a safe pavement, and its breach of duty is not in failing to do the work, but in failing to compel the owner to do it. It is entitled therefore to notice, actual or implied, of the existence of the defect. This is the settled rule even as to defects in the street, where the duty to keep in repair is primary and mandatory. The charge of the learned judge would require the borough to know how long every pavement had been laid, and to keep informed of what repairs the owner had made upon it, in short, to *seek* for defects. The law only requires that it shall be vigilant to *observe* them when they become observable to an officer exercising reasonable supervision. The difference is not one of mere words, but one of great practical importance, for it is always easy to show, after an accident, how the defect might have been found if it had been sought for ; and to tell a jury that it is the duty of the municipality to seek, is to give them an opportunity, which few will hesitate to take, to make municipalities insurers against accidents of all kinds in the streets. In the recent case of Burns v. Bradford City, 137 Pa. 361, our brother McCollum said : " A municipal corporation is not an insurer against all defects in its highways, but it is answerable for negligence in the performance of its duties in the construction and care of them. For a defect arising in them without its fault or neglect, it is not liable, unless it has express notice, or the defect be so notorious as to be

evident to all passers." It was accordingly held in that case that although "it is a fact well known to the inhabitants of all our municipalities that sidewalks are liable in the winter to be thrown out of level by the action of the frost," yet the plaintiff, who was injured, very much in the same manner as the present plaintiff was, by the stringers of a plank walk being raised higher on one side than the other, could not recover without proof that the defect was observable by all passers. So here, the proper instruction to the jury should be that the borough was bound to keep a reasonable supervision over the condition of its sidewalks, but it was not liable for negligence unless it had actual notice or knowledge of the defect complained of, or it was so plain to observation and had existed so long a time that officers exercising a reasonable supervision ought to have observed it.

No case has been brought to our attention which holds any stricter rule than this. In Rapho Township v. Moore, 68 Pa. 404, it was held that when a bridge is old and has stood as long as the timbers usually last, it is negligence to omit proper precaution to ascertain its true condition. But there the duty to maintain the bridge was primarily and absolutely on the township, and the same element runs through all the other cases cited by appellee.

Judgment reversed, and venire de novo awarded.