# Workingman's Savings Bank & Trust Co. *v.* Pittsburgh.

*Appeals—Motion for judgment n. o. v.—Inferences.*

1. In considering an appeal from the refusal of a motion for judgment non obstante veredicto, all facts and inferences from facts, must be drawn in favor of the party having the verdict.

*Negligence—Municipalities — Excavations in streets — Lateral support—Duty to inspect—Soil in its natural state—Remedies.*

2. A municipality, like every other party using materials which are liable to decay, is affected with knowledge of that fact, and is liable to persons injured by reason of a failure to properly inspect and repair; and this is so, though the public work is in a highway and the injury is to the buildings on an abutting lot.

3. A city which excavates in a public street, is, like a private owner, absolutely bound to laterally support the adjoining property, even though the work be carefully done; but that duty, in the absence of negligence, relates only to the soil in its natural state.

4. In case of negligence, however, the liability extends to the buildings and other improvements injured thereby, as well as to the soil in its natural state.

5. For an injury necessarily resulting from the making of municipal improvements in the streets, remedy must be sought through a jury of view, and an appeal from its award; but, if the injury is caused by negligence, it can be redressed only in an action of trespass.

Argued October 7, 1925.  Appeal, No. 139, March T., 1925, by defendant, from judgment of C. P. Allegheny Co., Oct. T., 1913, No. 149, on verdict for plaintiff, in case of Workingman's Savings Bank & Trust Co. v. City of Pittsburgh.  Before MOSCHZISKER, C. J., WALLING, SIMPSON, SADLER and SCHAFFER, JJ.  Affirmed.

Trespass for injuries to real estate.  Before ROWAND, J.

The opinion of the Supreme Court states the facts.

Verdict and judgment for plaintiff for $7,200.  Defendant appealed.

*Error assigned* was refusal of judgment for defendant n. o. v., quoting record.

*John E. Laughlin,* Assistant City Solicitor, with him *Thomas M. Benner,* City Solicitor, for appellant, cited, as to lateral support: Fyfe v. Boro., 22 Pa. Superior Ct. 292; O'Connor v. Pittsburgh, 18 Pa. 187; McGettigan v. Potts, 149 Pa. 155; Pollock v. R. R., 275 Pa. 467.

*Edwin W. Smith,* of *Reed, Smith, Shaw & McClay,* for appellee cited: Cairns v. Chester City, 34 Pa. Superior Ct. 51; Betterly v. Scranton, 208 Pa. 370; Norristown v. Moyer, 67 Pa. 355; Rapho Twp. v. Moore, 68 Pa. 404.

OPINION BY MR. JUSTICE SIMPSON, November 23, 1925:

Plaintiff sued to recover the damages which it alleged were sustained by reason of defective work in the construction of a sewer in Madison Avenue in the City of Allegheny, now a part of the City of Pittsburgh, along the side of the property owned by plaintiff, and for a

negligent failure to keep the sewer in repair, after notice that it was in need thereof. From the judgment entered on a verdict for plaintiff, the city appeals; and,—possibly because the recovery was so much less than the money actually expended by plaintiff in restoring the property to its former condition,—only assigns as error the refusal of the court below to enter judgment for defendant non obstante veredicto. Under such circumstances, there being no writings to consider, the testimony, and all the inferences fairly deducible therefrom, if favorable to plaintiff, must be taken as true, and all unfavorable must be rejected (Fuller v. Stewart Coal Co., 268 Pa. 328; Fluke v. Lang, 283 Pa. 54); hence if the evidence justifies a recovery, because of either a faulty construction or a negligent failure to repair, the judgment must be affirmed. Since we think it should be, because of negligence in the latter respect, we need not consider that which is alleged regarding the former; but may limit our inquiry to determining whether there is any evidence, direct or inferential, from which the jury could properly have found that plaintiff suffered damages resulting from the alleged negligent failure to repair, the city claiming only, upon this point,—erroneously, as hereinafter appears,—"that there is no evidence of any failure to properly maintain."

Viewed in the way stated, the testimony may be summarized as follows: In 1895, the sewer was constructed, at the depth of some forty feet below the natural surface of the ground. The work was done by sinking shafts at intervals along the street, tunnelling between them, supporting the strata of earth, at and above the top of the tunnels, by heavy timbers, upheld by equally heavy posts at the sides of the tunnels, with braces running diagonally from the posts to the roof,—all of this part of the construction, it is admitted, being bound to rot in course of time,—and then building a circular sewer within the opening formed by the posts, the braces and the roof. By this method there necessarily remained

a large open space between the circular sewer and the sides and roof of the tunnel, which had to be filled in with earth, firmly tamped, if it was to remain as a permanent support for the superjacent soil. So long as the posts and roof remained in good condition the soil would be and in fact was upheld, irrespective of the character of the filling and tamping, which the city averred was done as well as the circumstances permitted.

In 1902 plaintiff bought its property on Madison Avenue, along the line of the sewer, and in the same year commenced, and subsequently completed, the erection of its bank building, with adequate foundation walls resting on a substratum of sand and gravel, fully sufficient to sustain it, so long as the sewer construction above referred to was kept in a proper condition. In 1908 the building began to show cracks, which increased to so great an extent as to cause fear that it would fall; repeated notices thereof were given to the city authorities, but nothing being done, either to repair the injury or prevent it becoming greater, plaintiff itself made an investigation, which showed that the timbers used in shoring and roofing the tunnel had rotted away, so much so that some of it would crumble in the hand, and that the back-filling alone was not sufficient to sustain the overlying soil, which had thereupon settled, dragging down plaintiff's property with it, and causing the injury of which complaint is made. The city was again asked to make the necessary repairs to plaintiff's building, and to prevent further injury to it, but refused to do anything; whereupon plaintiff had the work done, and sued the city to recover the expense thus incurred.

It is clear that if a method of construction is adequate at the time of performance, but the builder should reasonably anticipate that it will later become insufficient owing to a decay of the materials used, a municipality, like every other such builder, is affected with knowledge of this fact, and must, by proper inspection and repair, prevent injury to others. We have constantly applied

this rule in actions against public corporations: Norristown v. Moyer, 67 Pa. 355; Rapho v. Moore, 68 Pa. 404; Vanderslice v. Philadelphia, 103 Pa. 102; Kibele v. Philadelphia, 105 Pa. 41; Smith v. Muncy Creek Township, 206 Pa. 7; Gehringer v. Lehigh County, 231 Pa. 497.

In Vanderslice v. City of Philadelphia, 103 Pa. 102, supra, where, as here, by reason of lapse of time, the materials of which the sewer was constructed decayed and the street sank, causing plaintiff's houses, located on the adjoining lot, to settle, we allowed recovery for the injury to them, saying, at pages 107, 109: "When the obstruction or dilapidation is an ordinary result of the use of the sewer, which ought to have been anticipated, the omission to make an occasional examination, and to keep the sewer in apparent good repair, is a neglect of duty which renders the city liable: McCarthy v. City of Syracuse, 46 N. Y. 194......Compensation for the loss is the measure of damages. Permanent injury done to the buildings, costs of repairs, and the loss of rent for the time necessary to make the repairs, are elements affecting the market value, and the difference between that value in their injured condition and such value if uninjured, is compensation."

So, also, in Gehringer v. Lehigh County, 231 Pa. 497, supra, we said at pages 508-10: "The sixth and eighth specifications complain of the affirmance of two requests for charge to the effect that 'the omission to search for and discover latent defects resulting from the decay of material used in the bridge is evidence of negligence properly chargeable to those whose duty it is to repair,' and 'when a bridge has served for the time timbers are expected to last, and it may be reasonably expected that decay has set in, it is negligence to omit all proper precautions to ascertain its condition.'......In speaking upon the subject in hand, in Rapho v. Moore, supra, we said: 'The defect here was the inward rottenness of the timbers which constitute the main strength and princi-

pal support of the bridge. It was not outwardly visible, one of the supervisors having inspected the timbers outwardly just a short time before it fell. But the evidence shows that the bridge had been erected and stood the time it is usual that such timbers will last......[Under such circumstances] when it may reasonably be expected that decay has set in, it is negligence to omit all proper precautions to ascertain its true condition.' Again, in Rigony v. Schuylkill County, 103 Pa. 382, another bridge case, we said: 'Latent defects resulting from the decay of the materials used, after long use, come within a different category (from 'latent defects for which there is no liability') and the omission to search for and discover them is evidence of negligence properly chargeable......to those whose duty it is to repair.' ......The rule laid down in the cases last cited is reiterated in the cases of McCormick v. Washington Township, supra [112 Pa. 185]; Coulter v. Pine Township, supra [164 Pa. 543]; Whitmire v. Muncy Creek Township, supra [17 Pa. Superior Ct. 399]; and in Smith v. Muncy Creek Township, supra [206 Pa. 7]. In this latter case, affirming a judgment for the plaintiff, we said: 'The bridge that broke under the weight of the traction engine on which the plaintiff was riding was built...... in 1844, and from that time to the time of the accident in 1899, the floor timbers had not been renewed nor inspected by boring......The strength of the bridge was ample until the timbers were weakened by decay and were subjected to a severe strain by the use of the traffic engines. As there was the duty of inspection, the deterioration of the timbers should have been known to the supervisors.' These cases support the instructions, and the assignments are overruled."

The city also claims that it is not bound to laterally support property abutting on its streets (though we stated the contrary in Pollock v. Pittsburgh, Bessemer & Lake Erie R. R. Co., 275 Pa. 467, 470), and further contends that the extent of its liability, if any, can be

determined only by a jury of view, or on appeal from its decision, and, in any event, it would be limited to the injury sustained to the soil in its natural state. It is of course true that, so far as the work to be done necessarily results in an injury to property, the proceedings must be before a jury of view, followed by an appeal from its award; but, in that event, negligence is a matter not to be considered; if any is made to appear, it must be redressed by an action of trespass: Stork v. Philadelphia, 195 Pa. 101; A. H. Reid Creamery & Dairy Supply Co. v. Philadelphia, 274 Pa. 251, 254. In the instant case, for thirteen years no injury resulted from the actual method of construction, and none ever would have followed if the decaying timbers had been replaced by others in good condition.

Nor is the question one of lateral support, but, as stated, one of a negligent failure to substitute for the timbers, which were amply strong when put in place, but which, in course of time, had so rotted as not to be able to support the overlying soil, either new timbers, or something else which would give the necessary support. Moreover, if the law as to lateral support did apply, it also has no relation to questions of negligence; the right to it, so far as concerns the soil only, is absolute, whether or not there was negligence (1 R. C. L. 383-4; Matulys v. Phila. & Reading Coal & Iron Co., 201 Pa. 70); but, when this appears, the negligent party is liable for injuries to buildings and other improvements, as well as to the ground itself: 1 R. C. L. 384-5; Durante v. Alba, 266 Pa. 444, 447; Home Brewing Co. v. Thomas Colliery Co., 274 Pa. 56.

The judgment of the court below is affirmed.