Yordy v. County of Northumberland, Appellant.

238

Argued October 26, 1931.

Before Trexler, P. J., Keller, Linn, Gawthrop, Cunningham and Baldrige, JJ.

*J. A. Welsh,* for appellant.

*Fred B. Moser,* for appellee.

Opinion by Gawthrop, J., January 28, 1932.

On October 13, 1928, plaintiff, the owner and oper-

ator of a hauling outfit consisting of a White automobile truck with a trailer attached thereto, attempted to drive the equipment, which was loaded with green rock oak timbers twenty-seven to thirty-five feet in length, over the covered wooden bridge spanning Shamokin Creek in the County of Northumberland. The combined weight of the truck and load was about thirteen tons. Plaintiff had driven a similar load across the bridge a few days before. When he drove upon the bridge with the second load the floor at the east end thereof suddenly collapsed, the front end of the truck hung on the cross beam immediately in front of it, and the rear end dropped down into the creek eight or nine feet below. The truck was damaged. The verdict was for plaintiff, and defendant appeals.

The principal contention of appellant is that it was entitled to binding instructions, or to judgment n. o. v., because the evidence does not justify a finding by the jury that there was a negligent failure of the county commissioners to maintain the bridge in a reasonably safe condition for use by the travelling public. In considering this question the testimony and all the inferences fairly deducible therefrom, if favorable to plaintiff, must be taken as true, and all unfavorable must be rejected.

The testimony shows that the bridge was about sixty years old. It was seventy feet long and sixteen feet wide, and consisted of seven panels or sections of ten feet each. Plaintiff testified that the cross beam at the east end of the bridge and the one located ten feet west of it "broke off like a match stem ...... broke straight off ...... they were rotten;" that they broke "about where the wheels hit the bridge;" that he examined them after the accident; that the two cross beams which broke were "so old and brittle it was hard to tell what kind of wood it was; it was too old and rotten to tell what kind of wood it was, the one;" that

it was "rotten pretty near clean through ...... it was decayed, but in the center was a little left." Plaintiff testified also that he "looked all over the bridge" about one month before the day of the accident "to see how everything was" ......; that he looked for warning signs, but there were no signs on either end of the bridge. Plaintiff's witness, Martz, testified that one of the cross beams which broke "was decayed some."

The testimony of the county engineer was to the effect that he made repeated and careful inspections of the bridge, the last examination being thirty days before the accident. His inspections included the abutments and the superstructure. He said that on the last inspection he tested the timbers, by sounding them to see if any of them were rotten, and found nothing to indicate that there were any defects therein, and that the bridge was "in excellent shape ...... as good shape as any bridge in Northumberland County, if not better than most of them." He testified further that he went to the bridge the day after the accident, but that he did not examine the cross beams that had fallen into the creek because they were buried in the mud. A witness for defendant, who had charge of the reconstruction of the bridge, testified that he saw the two broken cross beams when they were taken from the water, but that he did not "examine them specifically." So far as the record shows no other witness testified as to the condition of these timbers after the accident.

We are unable to agree with the learned county solicitor that upon this showing a jury ought not be permitted to determine the question whether the county commissioners were negligent in the performance of the duties imposed upon them by statute in respect to the maintenance of this bridge. The law as to the duties devolving upon the commissioners of

a county in the care of its bridges is well settled. Among the duties of these officers is that of making such, inspections as are from time to time required so that the bridges within their control are kept in a reasonably safe condition and suitable for the moving of traffic reasonably expected to pass across; and to effect that end they are required to employ suitable engineers to perform the service of inspection so that the strength of the structures committed to their care may be determined: Travers v. Delaware County, 280 Pa. 335. The record shows that such an engineer was employed by the commissioners of defendant. In the Travers case Mr. Justice SADLER, speaking for the court, said that while the employment of a competent engineer to inspect the bridges in their charge would not relieve the commissioners from their responsibility of making personal examination, "if it appears expert advice had been called on and heeded, the county should not be liable without the proof of knowledge of the latent defect." If defects are observable by reason of exterior marks, steps must be taken immediately to protect the travelling public: Case v. Lehigh C. & N. Co., 248 Pa. 598. But, if the flaw is hidden, and is not obvious (Rigony v. County of Schuylkill, 103 Pa. 382) the measure of care required is that which ordinarily prudent men would be expected to exercise in the management of their own affairs. It has been held that when the accident is the result of a latent fracture, in a lawful structure, the county is not to be held liable, unless the officers had actual notice of the threatened danger and made no effort to prevent injury, and that the mere fact that the subsequent examination made it apparent that the defect had existed for some time is not enough: Childs v. Crawford County, 176 Pa. 139; Travers v. Delaware County supra, but in Rigony v. County of Schuylkill, supra, another bridge case, the Supreme Court said:

"Latent defects resulting from the decay of the material used, after long use, come within a different category (from latent defects for which there is no liability) and the omission to search for and discover them is evidence of negligence, properly chargeable however to those whose duty it is to repair." This is the law as declared in Rapho v. Moore, 68 Pa. 404, another wooden bridge case, in which the defect was inward rottenness of the timbers which supported the bridge. The Supreme Court said: "It was not outwardly visible, . . . . . . but the evidence shows that the bridge had been erected and stood the time it is usual that such timber will last," and . . . . . . "that the internal condition of the timbers can be readily determined by boring into them at proper points. The question of liability for this latent defect was determined by the jury on these facts, the court having . . . . . . left it to them to determine whether the supervisors had used ordinary care in performing this duty and in applying the proper test to ascertain the soundness of the timbers of the bridge . . . . . . When a bridge is old, having stood for the length of time the timbers composing it are accustomed to last, and when it may be reasonably expected that decay has set in, it is negligence to omit all proper precautions to ascertain its true condition. Nor will mere appearance in such case excuse the neglect. It is a matter of common knowledge that invisible defects may, and under such circumstances probably do exist; that either wet or dry rot may have set in, and not be visible, and therefore should be sought for. But no one of ordinary intelligence would think of seeking for an inward and invisible defect by merely inspecting the surface of the wood." This rule was followed in Gehringer v. Lehigh County, 231 Pa. 497, another bridge case, and cited with approval in Workingman's Savings B. & T. Co. v. Pgh., 284 Pa. 248, in which

numerous cases in which this rule was applied are cited. These cases decide that the question of the sufficiency of the inspections made by the county commissioners was for the jury to decide upon the evidence, guided by the impression which the witness made upon them as to the thoroughness and sufficiency of the test described. "The real question was whether the test used was such as the ordinarily prudent man would have adopted:" Gehringer v. Lehigh County, supra. In Whitmire v. Muncy Creek Township, 17 Pa. Superior Ct. 399, President Judge RICE, speaking for this Court, said: "The rule as to the responsibility for latent defects (for which there is no liability) does not apply if inspection was a duty, and upon inspection the defect would have been discovered. See also Coulter v. Pine Township, 164 Pa. 543, another bridge case which decides that it is the duty of those having charge of a wooden bridge to make an internal examination of the timbers by boring, in order to ascertain whether the bridge is safe.

The cases relied upon by the county solicitor are readily distinguishable from this case in their facts.

In Sumey v. Fayette County, 298 Pa. 93, the bridge was constructed of steel and there was no proof of any latent defects. No corrosion, decay, rust, hidden cracks or flaws were testified to by any witness.

Knopf v. Delaware County, 292 Pa. 237, involved a steel bridge, and latent defects which were not shown to have been discoverable by competent inspection.

In Branch Storage Co. v. County of Bucks, 101 Pa. Superior Ct. 30, the only evidence of the condition of the bridge was that the timber girders which broke were apparently "brittle, evidently from age," were dry and broke with "a rather clean break." There was no evidence of decay.

Our conclusion is that it would have been flagrant error for the court below to declare as matter of law

that the county commissioners had done their whole duty.

The other complaints in behalf of appellant require but brief discussion. Complaint is made of the refusal of the court to strike out the testimony of a witness as to the damages to the truck. The motion was made when the court reconvened on the morning of October 15th. The parties closed their case the day before and the witnesses had been discharged and were not in attendance when the motion was made. The motion was refused because it was tardily made. The testimony had been received without objection and if the motion had been granted plaintiff would have been deprived of the opportunity of establishing the facts to which this witness testified by other witnesses. Under these circumstances and, in view of the amount of the verdict, we are not convinced that appellant was injured by the ruling or that the ruling amounts to reversible error.

One of the plaintiff's witnesses who knew the bridge for sixty years and lived near it, testified that a great many trucks hauling stone and timber passed over the bridge six years preceding this accident, and was permitted to state, against the objection of defendant, that about three years before the accident a truck carrying a load of stone went through the west end of the bridge, and that repairs were made to the bridge at that time. It is urged that the admission of this evidence was harmful error, because it tended to give the jury the impression that the bridge was constantly out of repair. A careful reading of the whole record, in the light of this argument, has failed to convince us that it has such merit as requires us to hold that harmful error was committed in admitting this evidence, although we are satisfied that the evidence was not strictly relevant.

Lastly, the county solicitor urges that the court

should have declared, as matter of law, that plaintiff was guilty of contributory negligence because he was hauling a load which he knew was extraordinarily heavy and more than the bridge could carry. Under the evidence as to the real weight of the load and the character of the traffic to which the bridge was customarily subjected the question, whether the weight of the truck and trailer and the weight of the load resting upon them was in excess of the usual and ordinary load which the county commissioners had reason to believe a user of the bridge would subject it to, was for the jury. There were no notices on the bridge warning the users of its capacity. The judge instructed the jury that if the weight was in excess of 25,000 pounds, or if defendant had heard that the bridge was not safe and he tested the danger and the accident resulted from such testing, he could not recover. This was at least as favorable to defendant as it had a right to ask.

The questions raised by assignments of error complaining of the refusal to affirm certain of plaintiff's points for charge were not referred to in the statement of the questions involved, nor discussed in appellant's brief. For that reason we refrain from discussing them. No complaint as to the general charge was raised by any assignment. The case was tried with care by the learned judge who presided at the trial, and the charge presented the questions to the jury clearly and fairly. We find no cause for disturbing the judgment.

The judgment is affirmed.