## Siger *v.* Pittsburgh, Appellant.

Argued April 28, 1944. Before KELLER, P. J., BALD-RIGE, HIRT, KENWORTHEY, RENO and JAMES, JJ. (RHODES, J., absent).

*Harry Savage,* Assistant City Solicitor, with him *Anne X. Alpern,* City Solicitor, for appellant.

*James P. McArdle,* for appellee.

OPINION BY JAMES, J., September 28, 1944:

The city of Pittsburgh appeals from the refusal of its motion for judgment n. o. v.

Plaintiff resided and was the owner of a grocery store at 2129 Webster Avenue in the city of Pittsburgh,

from which he also conducted a huckstering business. On May 31, 1939, he parked his truck in front of his store, picked up a fifty-pound box of bananas and without looking, jumped from the truck about 3 feet to the sidewalk. He landed on the manhole cover of a sewer which gave way and he suffered personal injuries for which the suit was brought. The cover and drop to the sewer had been constructed by the city during 1937.

Plaintiff's counsel started to try the case on the theory that the city's negligence consisted of improper construction. There was evidence that the cover was made of concrete and steel, and the flange supporting the cover was made of concrete without any metal rim to support the cover or to prevent it from chipping and wearing away. Finding that he was unable to produce an expert witness he called plaintiff's married daughter to prove constructive notice to the city of the lid's wornout and defective condition. She testified that for a period of several months prior to the accident she had noticed on a number of occasions that as people walked along the sidewalk and stepped on the lid, it tilted. She never advised her father of the defective condition because she did not think it was important and the plaintiff said he neither knew of nor noticed it. Although there was sufficient evidence from which the jury could infer the cover was worn and defective, it must be conceded that when it was in place there was nothing to obviously indicate the danger; otherwise appellee's failure to look before he jumped would convict him of contributory negligence as a matter of law. Compare *Cooney v. City of Pittsburgh*, 149 Pa. Superior Ct. 593, 27 A. (2d) 490, with *Roth v. Verona Borough*, 316 Pa. 279, 175 A. 689.

There may be some question whether a municipality has a duty to construct and maintain a manhole cover secure enough to withstand the weight of a man holding an additional fifty pounds who jumps upon it from

a height of 3 feet but we need not decide that question as we think the case is ruled on broader grounds.

Although a municipality has a primary duty to maintain in good condition its sewer covers on sidewalks or cartways (*Good v. Philadelphia,* 335 Pa. 13, 6 A. (2d) 101; *Felts v. Borough of Duryea,* 104 Pa. Superior Ct. 59, 158 A. 592), as distinguished from a secondary duty for the maintenance of private coal hole covers (*Green v. Philadelphia,* 63 Pa. Superior Ct. 121), it ordinarily has no duty to make inspections to discover defects and is only required to be vigilant to observe the defects when they can be seen by one of its officers exercising reasonable supervision; *Malone v. Union Paving Co.,* 306 Pa. 111, 159 A. 21. Liability is predicated upon actual or implied notice of the existence of the defect: *Lohr v. Phillipsburg Borough,* 156 Pa. 246, 27 A. 133; *Murdaugh v. Oxford Borough,* 214 Pa. 384, 63 A. 696; *Burd v. Philadelphia,* 223 Pa. 654, 73 A. 6. However, if from the character of the defect it should have been known that deterioration, delapidation or decay causing the defect were the natural and ordinary consequences of the construction employed, the mere absence of notice will not relieve the municipality from liability: *Truschine v. Fayette Mfg. Co.,* 63 Pa. Superior Ct. 124, 130. The municipality then has the affirmative duty of making reasonable periodic inspections: *Vanderslice v. Philadelphia,* 103 Pa. 102; *Workingman's Savings Bank & Tr. Co., v. Pittsburgh,* 284 Pa. 248, 131 A. 283; *Rapho Twp. v. Moore,* 68 Pa. 404. Had plaintiff shown that the absence of a metal rim would cause a gradual deterioration and chipping of the concrete and that a sufficient time elapsed from the original construction in 1937 or the last inspection, if any, to require a more recent examination, proof of the fact the lid tilted when stepped on by a pedestrian would take the case to the jury.

Ordinarily the question of constructive notice is for the jury, but where the defect is not observable to the

plaintiff and can only be discovered by a close examination it becomes a matter of law for the court: *German v. McKeesport*, 137 Pa. Superior Ct. 41, 8 A. (2d) 437. Plaintiff cannot charge the city with constructive notice of a latent defect in a part of the sidewalk in front of his own property when he went over the sidewalk many times and was unable to see anything wrong with the manhole cover. *Good v. Philadelphia*, supra. The daughter's testimony that "it tilted when somebody would walk on it" was clearly insufficient: *Green v. Philadelphia*, supra. The daughter further testified that there was no iron binding around either the inside or outside of the manhole and (without objection) subsequent to the accident the manhole was improved, just in what manner the evidence does not disclose. From this testimony the court below held that this condition was such as could be seen by a city policeman or inspector. We cannot see where a condition which was not observable by the owner of the property, who frequently passed over the sidewalk, could have been observable by a policeman or inspector.

Plaintiff further argues that there was evidence to show actual notice (*Burd v. Philadelphia*, supra) that on several occasions, shortly prior to the happening of the accident, the city supervisor had removed the cover of the manhole for the purpose of cleaning the sewer and that the condition of the cover was such that he should have noticed it when he removed it. This argument might have some merit if the facts were sufficient to support it, but the record is absolutely barren of evidence from which the jury would infer that the supervisor had notice. All he said was that his records showed that the sewer drop had been flushed on June 16, 1938, about a year before the accident. He had no recollection of a personal inspection and his only other visit to the property had been to investigate the flooding of the cellar which did not require the removal of the lid.

A discussion of the cases from sister states, cited by appellee, is unnecessary; some are easily distinguishable on the facts and others are in direct conflict with what our courts have laid down as the rule fixing liability under comparable facts.

Judgment is reversed and entered for defendant.