Askin et ux., Appellants, *v.* Pittsburgh.

Argued April 10, 1946. Before BALDRIGE, P. J., RHODES, HIRT, RENO, DITHRICH, ROSS and ARNOLD, JJ.

*Louis Vaira,* with him *Joseph P. Passafiume,* for appellants.

*Thomas E. Barton,* Assistant City Solicitor, with him *Anne X. Alpern,* City Solicitor, for appellee.

OPINION BY HIRT, J., July 19, 1946:

The wife-plaintiff was injured when a rotted board in a wooden sidewalk, broke under her as she stepped upon it. These appeals go to the entry of judgments for the city notwithstanding verdicts for plaintiffs. It is conceded that the wife-plaintiff is not chargeable with contributory negligence as a matter of law, and the only question raised is the negligence of the city.

Baldauf Street, a short dead-end street runs east and west along a hillside in a thickly populated section of Pittsburgh. The city gave little attention to its improvement; the roadway was too rough even for automobile traffic. On the lower side, for the most part, there was but a foot path. On the south, the street abuts the rear of lots which extend uphill with dwellings fronting on Huron Street. The upward slope of the lots to Huron Street is about 35 degrees. The photographs in evidence show the wooden sidewalk in question, 60 feet in length, connecting two other sections of the walk apparently made of concrete. This wooden walk had been *built by the City of Pittsburgh* eleven years before. Boards cut to length were laid crosswise on stringers which supported them. A crude wooden hand rail was constructed along the street side of the walk.

In the early afternoon of February 24, 1944, a bright clear day with no snow or ice anywhere, plaintiffs were walking in a proper manner across the wooden structure. About midway, as the wife stepped on one of the cross boards, it broke off near the upper end because of its rotted condition; she was injured when her leg went down into the opening. The injury occurred on the walk below an abutting lot owned by one Wick. Several years

before the walk was built, Wick had constructed a low concrete retaining wall along the lower end of his lot. There was a ten-inch open space between this wall and the walk when built by the city: But no provision was made for disposing of surface wash from the high land above the walk. Before long the opening became filled with silt, and soil was washed over the retaining wall on to the boardwalk. As much as 16 inches of the cross-boards along the upper side of the walk were covered with packed soil to a depth of several inches. Grass and weeds grew on these deposits on the walk. This condition had existed for more than three years. The accumulations on the walk were never removed by the city and rarely by the property owners.

Although the structure in question bridged somewhat low land between two concrete sections of the walk, it was not a bridge in contemplation of law imposing the duty on the municipality of inspection for latent or concealed defects, on that ground, as in *Smith v. Muncey Creek Township,* 206 Pa. 7, 55 A. 767; *Rapho v. Moore,* 68 Pa. 404; *Yordy v. Co. of Northumberland,* 104 Pa. Superior Ct. 237, 158 A. 607. Judgment was entered for the defendant by the court below on the authority of *Lohr v. Philipsburg Borough,* 156 Pa. 246, 27 A. 133. In that case the plaintiff was injured by the failure of a board walk in a borough, because of decay. It was there held: "the borough was bound to keep a reasonable supervision over the condition of its sidewalks, but it was not liable for negligence unless it had actual notice or knowledge of the defect complained of, or it was so plain to observation and had existed so long a time that officers exercising a reasonable supervision ought to have observed it." The *Lohr* case stands alone in applying general principles governing sidewalk cases, to the failure of a boardwalk from latent decay, although followed in later cases involving walks of more permanent materials. That case dealt with a sidewalk in an era when boardwalks were common in boroughs and

rural communities. From experience in their general use, everyone in the community knew of the impermanence of walks built of wood and of hazards to be avoided in their use. Cf. *Shaffer v. Harmony Boro.*, 204 Pa. 339, 54 A. 168. That era has passed, with the almost universal use of concrete or other permanent paving materials. It may be questioned whether the *Lohr* case is applicable in limiting the liability of a present-day metropolitan city which in only rare instances builds, or allows a sidewalk to be built, of wood. It may be, that in such instances, a duty rests on the city to inspect the structure from time to time for latent defects rather than to rely on outward appearances of the walk as a defense to liability when injury occurs. Perhaps the city and not the unwary pedestrian should determine when a boardwalk is no longer safe.

However that may be, we are of the opinion that within the limits of the *Lohr* case, although the question may be close, defendant is not entitled to judgments on this record. It was the city which selected the material and built the walk; the property owner, ordinarily primarily responsible, was not consulted. The city is charged with knowing that wood exposed to moisture will rot. Thus a municipality has been held liable for damages resulting from the fall of a decayed wooden pole, *Norristown v. Moyer*, 67 Pa. 355; and from defective timbers in a sewer, *Workingman's Savings B. & T. Co. v. Pittsburgh*, 284 Pa. 248, 131 A. 283. A builder, though a public corporation, cannot discharge its whole duty to the public by the use of materials, which though adequate when installed, will certainly, at some time in the future, become unsafe because of inherent liability to disintegration or decay. Cf. *Workingman's Saving B. & T. Co. v. Pittsburgh*, supra; *Siger v. Pittsburgh*, 156 Pa. Superior Ct. 51, 39 A. 2d 296. Here, the city is not charged with negligence for its failure to prevent the deposit of soil on the walk from the natural flow of surface water. But it must have known that wood, mulched

by a covering of soil, will retain moisture and will disintegrate rapidly. The unrotted condition of the bare surface of the eleven-year-old walk was not an index of the condition of the wood covered by the soil. The fact that ends of the boards had been so covered to a point inside of the bearing on the girder, for three years or more, put the city on notice of their almost certain rotted condition and the necessity for replacement.

This was a fair inference for the jury. In the *Lohr* case the Supreme Court reversed a judgment for the plaintiff because of an erroneous instruction: that it was the borough's "duty to exercise proper supervision or make proper examinations of this pavement by going upon it and testing it to discover . . . whether the pavement was defective or not". The grant of a new trial indicates that the testimony in the record was regarded sufficient to support a verdict for the plaintiff under proper instructions to the jury. The walk in that case, of hemlock boards (with a life of four or five years when put to that use) had been laid seven years before. The only evidence of decay "observable to an officer exercising reasonable supervision" were loosened nails which "were drawn out of the plank owing to its rotten condition".[1] The deposit of soil on the walk, in the present case, of which the city had notice for years, was as indicative of rot as the nails in the *Lohr* case. This observable condition put the city on notice of the defect which resulted in plaintiff's injury.

Judgment reversed and here entered for plaintiffs on the verdicts.

---

[1] At the second trial plaintiff failed to establish that fact; the testimony was that boards in the walk were loose, but "you couldn't see anything wrong without examining it". For that reason the judgment in plaintiff's favor was reversed on the second appeal. *Lohr v. Borough*, 165 Pa. 109, 30 A. 822. It is interesting, however, to note that Mr. Chief Justice STERRETT, who wrote the opinion in the first appeal, by his dissent, indicated that in his opinion the judgment for plaintiff should have been affirmed.